623 P.2d 1015

**Donald Ray HARMON,**
**Plaintiff-Appellant,**

v.

**ATLANTIC RICHFIELD COMPANY,**
**Defendant-Appellee.**

No. 4658.

Court of Appeals of New Mexico.

Jan. 8, 1981.

Writ of Certiorari Denied Feb. 5, 1981.

Gary C. Mitchell, Payne, Mitchell & Quigley, P. A., Ruidoso, Jerry P. Childs, Childs & Bishop Law Offices, Inc., Odessa, Tex., for plaintiff-appellant.

Briggs F. Cheney, Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

Plaintiff, an employee of E & H Well Service, an independent contractor, was injured while gauging the frac tank owned by defendant Atlantic Richfield Company (ARCO). Plaintiff sued ARCO, alleging that ARCO had been negligent in failing to provide Harmon with a safe place to work and that Harmon had been injured as a result of such negligence. The trial court granted defendant summary judgment from which plaintiff appeals. We affirm.

The order granting summary judgment stated:

[T]he material facts upon which there is no genuine issue are as follows:

1. ... Defendant ... was the owner of an oil field operation ... and ... had entered into a contract with E & H Well Service to perform tasks related to the development and completion of this oil well operation.

2. The relationship ... is evidenced by a written contract setting forth the duties and obligations of each party ....

3. Under the terms ... of Paragraph 2 ... E & H Well Service was obligated prior to commencing any work to make a thorough inspection of the work site to determine the difficulties and hazards incident to doing the work ... in a good workman like manner.... to provide continuous adquate [sic] protection of the work, Atlantic Richfield's property and adjacent property ... to take all neces-

sary precautions for the safety of all persons and employees on the work site.

4. ... Plaintiff ... was employed by E & H Well Service at the time of the accident and ... was acting in the scope of that employment.

5. ... [plaintiff received workmen's compensation].

6. [T]he task which was being performed ... at the time of the accident was to guage the frac tank on an hourly basis and ... while making such measurement sustained the accident ... by reason of gas emitting from the frac tank.

7. ... Plaintiff had ... observed gas emitting from the tank and at the time he commenced to guage the tank just immediately prior to the accident, was aware that the well had begun to flow at a very rapid rate and that he could both see and hear the gas emitting from the frac tank.

8. Mr. Harmon through his experience in working in the oil field had been told and recognized that a person should be extremely careful of gas and to avoid the inhalation of such gas and should utilize any and all safety precautions available.

9. *Defendant ... have [sic] not at any time exercised any control over E & H Well Service's operation as to the manner by which the frac tanks were to be measured.* [Emphasis added.]

The court made the following conclusion of law:

1. *... [defendant] was not liable ... in that ... [defendant] did not in any manner exercise any control over the independent contractor E & H Well Service's operation and the supervision and responsibility of job safety ... was the duty of E & H Well Service.* [Emphasis added.]

The summary judgment is clear and contains detail akin to a full decision. It deserves the commendation of this Court. It offers plaintiff a rare opportunity to show either that an issue of fact exists as to any finding made, or that the conclusions of law are not supported by the findings made.

However, summary judgment was granted ARCO, not upon plaintiff's theory that ARCO failed to provide plaintiff a safe place in which to work. It was based upon a lack of right to control theory expressed in ARCO's contract with E & H Well Service, an independent contractor. The contract relieved ARCO of any liability for any duty or negligence theory of job safety. ARCO was entitled to summary judgment under both theories.

**A. *Mode of procedure on appeal for summary judgment.***

■ Eight years ago, *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972) established the respective burden of the parties to seek or prevent entry of summary judgment. *First*, the burden is on defendant to show an absence of a genuine issue of material fact or that defendant was entitled to judgment as a matter of law. *Second*, if defendant makes a prima facie showing that defendant is entitled to summary judgment, plaintiff, then, has the burden of showing that a genuine issue of material fact exists or that defendant was not entitled to judgment as a matter of law.

■ If summary judgment is granted defendant and plaintiff appeals, plaintiff, to seek a reversal, must challenge the summary judgment as follows:

(1) Set forth all of the facts and evidence presented by defendant in the trial court and demonstrate that defendant failed to make a prima facie showing.

(2) If defendant did make a prima facie showing, then set forth all of the facts and evidence presented by plaintiff in the trial court to demonstrate that a genuine issue of material fact does exist.

(3) If summary judgment were granted as a matter of law, set forth all of the law on the subject matter.

Seldom are these rules followed.

In the instant case, based upon plaintiff's complaint, the issue is:

As a matter of law, did ARCO have a duty to provide plaintiff with a safe place in which to work?

It is established law that whether, under the circumstances of a given case, a duty exists is a pure question of law for the courts. *Southern Union Gas Co. v. Briner Rust Proofing Co.*, 65 N.M. 32, 331 P.2d 531 (1958).

B. *ARCO made a prima facie showing.*

Absent the contract between ARCO and E & H Well Service, ARCO had a duty to provide plaintiff with a safe place in which to work on ARCO's premises. This theory is a matter of first impression in New Mexico.

It is important to distinguish between two theories of liability: (1) the theory wherein an employer engages an independent contractor to perform inherently dangerous work and owes no duty to an employee of the independent contractor; (2) the theory wherein an employer engages an independent contractor and owes a duty to provide an employee of the independent contractor with a safe place in which to work.

Under the first theory, an employer owes no duty to employees of an independent contractor in situations involving inherently dangerous work. *New Mexico Electric Service Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976). However, *Montanez* did not discuss the duty of an employer to provide the employee of an independent contractor with a safe place to work. It was limited to "inherently dangerous work."

Later, this Court declined to hold that *Montanez* disposed of plaintiff's safe place to work claim; that *Montanez* cast doubt on whether an employer has a duty to provide a safe place to work for an employee of an independent contractor. *Fresquez v. Southwestern Ind. Co. & Riggers, Inc.*, 89 N.M. 525, 554 P.2d 986 (Ct.App.1976). However, *Fresquez* said:

... We assume, but do not decide, that the general contractor has such a duty. [Id. 530, 554 P.2d 986.]

Yet, *Fresquez* also said:

... The "place" the general contractor *must keep safe* does not include the equipment of the independent contractor.

*Ortiz v. Uhl*, 39 A.D.2d 143, 332 N.Y.S.2d 583 (1972), affirmed, 33 N.Y.S.2d 989, 353 N.Y.S.2d 962, 309 N.E.2d 425 (1974).... [Emphasis added.] [Id. 531, 554 P.2d 986.]

We are in a quandary. If we read *Fresquez* correctly, *Montanez* and *Fresquez* did not decide the issue. Yet *Fresquez* did decide the "place" that the employer "must keep safe," based upon *Ortiz*, cited as authority. *Ortiz* held that the owner of premises has a duty to furnish a safe place to work insofar as its facilities are concerned. The facilities on the owner's "premises" do not include equipment of or the very work the independent contractor performs. *Fresquez* said that "premises" of the owner did include equipment or materials of the owner being worked on or repaired. Thus, "premises" includes ARCO's frac tank. In *Ortiz*, plaintiff was injured by the operation of a crane, equipment under the control of Uhl for whom plaintiff was employed. In the instant case, plaintiff was injured by the frac tank, equipment under the control of ARCO, for whom plaintiff was not employed.

The time is now ripe to establish a rule of law in the employer-independent contractors "safe place to work" concept. We hold that an employer who engages an independent contractor to perform work on the employer's premises, absent any contractual provisions to the contrary, has a duty to provide an employee of an independent contractor with a safe place in which to work. "Premises" includes equipment and materials of the employer being worked on or repaired by the employee of the independent contractor. Such equipment and materials, along with a broad meaning of the employer's "premises", are under the exclusive control and supervision of the employer.

There is also a comparable theory of tort law where an employee of an independent contractor is engaged in inherently dangerous work on the employer's premises. See, *Montanez v. Cass*, 89 N.M. 32, 546 P.2d 1189 (Ct.App.1975), disapproved by the Supreme Court in *Montanez, supra*. We recognize

that whether an employer should be held liable to an employee of an independent contractor is a matter of "judicial public policy" in application of rules of law. In arriving at a determination of liability, we should take into consideration the right of an employer to contract non-liability with an independent contractor.

In the instant case, ARCO was careful, precise and explicit in the preparation of its contract with E & H Well Service to avoid liability. Paragraphs 2, 3 and 4 read as follows:

2. When COMPANY notifies CONTRACTOR that COMPANY desires certain work to be performed for it by CONTRACTOR, the performance of such work by CONTRACTOR shall be subject to and in accordance with all of the terms and provisions of this agreement. *CONTRACTOR, before starting work, shall make a thorough inspection of the work site to determine the difficulties and hazards incident to the doing of the work.* CONTRACTOR agrees to perform the work with due diligence and in a good and workmanlike manner. *CONTRACTOR shall provide continuous adequate protection of the work, COMPANY'S property and adjacent property, and take all necessary precautions for the safety of all persons and employees on the work, including employees of COMPANY,* and comply and cause CONTRACTOR'S employees and agents and others entering on COMPANY'S premises in the performance of said work *or in connection therewith to comply with all safety rules of COMPANY* and applicable provisions of federal, state or local safety laws, rules or regulations necessary to prevent damage or injury to any and all property and persons.

3. COMPANY shall not be obligated to call upon CONTRACTOR for the performance of any work whatsoever. The designation of work to be performed and the cessation of work shall be at the discretion of COMPANY, that the work herein provided for shall be done and performed by CONTRACTOR as an independent contractor and under the sole supervision, management, direction and control of CONTRACTOR. *COMPANY shall look to CONTRACTOR for results only, and shall have no right at any time to direct or supervise CONTRACTOR or CONTRACTOR'S servants or employees in the performance of said work or as to the manner, means and methods by which work or labor is performed.* CONTRACTOR agrees that any and all work done by CONTRACTOR pursuant to this agreement shall meet with the approval of COMPANY'S engineers or inspectors, and that the work in process or any job shall be open to inspection by COMPANY at all times, *but that the manner and method of doing such work shall be under the sole control of CONTRACTOR.*

4. COMPANY may, without any liability to CONTRACTOR, countermand any work order given to CONTRACTOR at any time before such work is commenced by CONTRACTOR, or may order the cessation of such work at any time, being liable to CONTRACTOR in the latter case for only the value of the work performed prior to cessation order, at the rates above set forth. [Emphasis added.]

These provisions establish as a matter of law that E & H Well Service was an independent contractor with exclusive control over the manner, means and method by which work or labor was to be performed by its employees. To avoid any misunderstanding, ARCO placed the duty on E & H Well Service to "take all necessary precautions for the safety of *all* persons and employees on the work, *including employees of*" ARCO. A duty to provide plaintiff with a safe place to work was on E & H Well Service, his employer, not on ARCO.

Plaintiff relies on *DeArman v. Popps*, 75 N.M. 39, 400 P.2d 215 (1965) in which summary judgment in favor of defendant was remanded. The remand resulted from the fact that at all material times, defendant maintained control of its premises to the extent that it supervised the work of plaintiff's employer, and of other service companies working on defendant's gas well to see

that the various jobs were performed expeditiously and that desired results were being achieved. *DeArman* stands for the proposition that one who entrusts work to an independent contractor, *but who retains the control of any part of the work*, owes a duty to others to exercise reasonable care for their safety. The ARCO–E & H Well Service contract explicitly avoided liability under the *DeArman* rule.

In the instant case, the 500 barrel frac tank was owned by Two State Tank Rental and leased to ARCO for use on its premises during the completion of the well. The fact that ARCO did not own the tank is immaterial. *DeArman.*

ARCO did not give plaintiff any instructions insofar as gauging the tank was concerned.

ARCO made a prima facie showing of no liability. The burden shifted to plaintiff.

### C. *Plaintiff did not meet his burden.*

■ Plaintiff claimed that ARCO's drilling foreman, who oversaw the drilling and completion of the oil well when the drilling rig moved in, told plaintiff to gauge the frac tank every hour. What ARCO's foreman told plaintiff to do in this respect does not fall within the concept of the "right to control." It was an indication or identification of work to be done under the ARCO–E & H Well Service contract. The contract provides that ARCO shall look to E & H Well Service "for results only, and shall have no right at any time to direct or supervise . . . in the performance of said work or as to the manner, means and method by which work or labor is performed. . . . the manner and method of doing such work shall be under the sole control of CONTRACTOR."

ARCO did not waive this provision in the contract.

■ A designation of work to be done is not the equivalent of control of the work to be done. The right to control work to be done means the "right of control as to the mode of doing the work contracted for." *Palma & Ruppe v. Weinman & Barnett,* 15 N.M. 68, 84, 103 P. 782 (1909); *Burruss v. B. M. C. Logging Co.,* 38 N.M. 254, 31 P.2d 263 (1934); *Bland v. Greenfield Gin Co.,* 48 N.M. 166, 146 P.2d 878 (1944); *Huff v. Dunaway,* 63 N.M. 121, 314 P.2d 722 (1957); *Shipman v. Macco Corporation,* 74 N.M. 174, 392 P.2d 9 (1964); *Campbell v. Smith,* 68 N.M. 373, 362 P.2d 523 (1961). If the control of ARCO descended to the details or to the means and methods of performance of the independent contractor, a master-servant relationship would be created. *Roybal v. Bates Lumber Company,* 76 N.M. 127, 412 P.2d 555 (1966); *Shipman v. Macco Corporation,* 74 N.M. 174, 392 P.2d 9 (1964). The direction given by ARCO's foreman to plaintiff did not establish a master-servant relationship with plaintiff. If it did, ARCO would have been liable only for workmen's compensation. Plaintiff did not file such a claim against ARCO.

■ In the instant case, plaintiff was free from the control of ARCO as respects the manner in which the details of the work were to be executed. Plaintiff's work was solely under the control and supervision of E & H Well Service from whom he received his workmen's compensation benefits. We may conclude by saying that a right to control the work of a person creates the master-servant relationship; that a lack of control creates an independent contractor relationship. We know that plaintiff did not believe his work was under the control of ARCO because no claim for workmen's compensation was filed against ARCO. This is not a case where plaintiff was serving two masters at the same time.

■ The best and most precise definition of "right to control" was set out in *Robertson v. Olson,* 181 Minn. 240, 232 N.W. 43, 45 (1930). By the term "right to control" is meant "the control which the law sees when one person performs services for another." At the time of the accident, plaintiff was performing a service for E & H Well Service.

Plaintiff did not meet his burden.

Plaintiff also argues that he was not contributorily negligent as a matter of law. This question is not an issue in this case.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and ANDREWS, JJ., concurring in result.