WILLIAM E. DOYLE, Circuit Judge.
 

 This an appeal from an action brought by plaintiffs-appellees, the Fortiers, against defendants-appellants, James A. Peterson, Peterson Properties, Inc. and Dona Anna Plaza Partners (collectively referred to as “Peterson”) and other defendants who do not appear here in this appeal.
 

 The lawsuit was to seek both compensatory and punitive damages in connection with the development, construction, and sale of the Dona Anna Plaza Shopping Center (herein referred to as “Dona Anna Plaza”) in Raton, New Mexico.
 

 
 *1328
 
 The Fortiers first were plaintiffs in the original suit for their damages against all defendants on a negligence theory, and they sued Peterson for damages based upon three theories of liability:
 

 (1) negligence;
 

 (2) breach of contract; and
 

 (3) fraud.
 

 Colony Foods, Inc. (hereinafter “Colony”), operates a restaurant in the Dona Anna Plaza, and also intervened in this action seeking compensatory and punitive damages against Peterson. Both the Forti-ers and Colony Foods prevailed on their claims, and defendant Peterson brings the appeal.
 

 Mr. Peterson was the owner and developer of Dona Anna Plaza. He sold the shopping center to the Fortiers on June 30, 1978. During the negotiations, the Forti-ers noticed problems with the parking lot. Peterson agreed to repair and warrant the parking lot as part of the final “Punch List.” After the Fortiers bought the shopping center, serious problems with the parking lot arose, and the Fortiers had to repave the entire lot. The Fortiers brought suit in the United States District Court for the District of New Mexico against Peterson and the various contractors who performed the original work on the shopping center parking lot. The Fortiers alleged that Peterson was negligent in supervising the design and construction of the parking lot; in instructing his architect, Armstrong, to ignore the parking lot design recommendations set forth in a 1976 San Juan Testing Laboratory report having to do with soil conditions; further, in directing the general contractor, Bellamah, to construct the parking lot in accordance with plans and specifications of Armstrong despite warnings from both Bellamah and Lincoln-DeVore Testing Laboratory that the plans and specifications were inadequate; and also in failing to repair the parking lot during the one-year period Peterson served as property manager for the Fortiers after the sale.
 

 The Fortiers alleged that Peterson was liable for breach of contract because he failed to repair the parking lot in accordance with the final Punch List. Furthermore, the Fortiers sought recovery against Peterson under three theories of fraud in connection with the sale of the property. They alleged fraudulent misrepresentation, negligent misrepresentation, and constructive fraud.
 

 A complication arose when Armstrong (the architect), filed for bankruptcy in the United States Bankruptcy Court for the Southern District of California, on January 26, 1983, five days before the trial was to begin. All pending proceedings against Armstrong were automatically stayed pursuant to 11 U.S.C. § 362. This particular damage action was removed at once by the Fortiers to the United States Bankruptcy Court for the District of New Mexico pursuant to 28 U.S.C. § 1478 and local Bankruptcy Rule 1-118. The day after that, the Fortiers filed a Complaint seeking relief from the automatic stay that became effective in the New Mexico Bankruptcy Court. On January 31, 1983, the New Mexico Bankruptcy Court judge entered an order purporting to lift the stay and allowing this case to proceed as planned. The case was transferred back to the New Mexico District Court, which scheduled the trial for February 2.
 

 The several claims here were tried to a jury. A verdict was returned in the form of special interrogatories, which found that the Fortiers had sustained damages amounting to $305,072.30, and also that the Fortiers had prevailed against Peterson on each of three separate theories of liability —negligence, breach of contract and constructive fraud. With regard to the Forti-ers’ negligence theory of liability, the jury found that the relative fault of Peterson was 70%, the relative fault of Armstrong (the architect) was 20% and the relative fault of the Fortiers was 10%.
 

 Judgment was entered by the district court on March 9, 1983, in favor of the Fortiers against Peterson and Armstrong in the total amount of $305,072.30, together
 
 *1329
 
 with costs.
 
 [1]
 
 The same judgment awarded Colony $205,322.00 compensatory and $500,000.00 punitive damages against Peterson.
 

 On March 18, 1983, Peterson sought to amend the judgment to reduce the Fortiers’ judgment against him. As against Colony, Peterson filed a Motion for judgment notwithstanding the verdict, remittitur or new trial. Peterson has never filed a motion for judgment n.o.v. new trial or remittitur as to the Fortiers.
 

 On May 27, 1983, the trial court denied Peterson’s motion for judgment n.o.v. against Colony, denied Peterson’s motion for a new trial against Colony, but partially granted Peterson’s motion for remittitur of the punitive damages awarded to Colony. The trial court also awarded attorneys fees and costs to the Fortiers.
 

 Colony and Peterson reached a settlement while this appeal was pending, and the Colony recovery has been remanded to the district court. Peterson has appealed the judgment in favor of the Fortiers.
 

 Peterson has raised five arguments on appeal and asks this court to reverse the judgment against him.
 

 First, he claims that Armstrong’s bankruptcy filing stayed the litigation against all parties and divested the district court of jurisdiction to hear this ease.
 

 Second, he argues that the trial court erroneously admitted seventeen exhibits under the business records exception to the rule against hearsay.
 

 Third, Peterson maintains that the district court erroneously denied his motion for a directed verdict with respect to the negligence claims.
 

 Fourth, Peterson claims that the amount of damages assessed against him by the district court was inconsistent with the jury verdict.
 

 Fifth, Peterson challenges the trial judge’s award of attorneys fees and expenses to the Fortiers. These contentions will be taken individually below.
 

 THE CONTENTION THAT THE TRIAL COURT LACKED JURISDICTION TO HEAR THE CASE
 

 Peterson argues that the Supreme Court’s holding in
 
 Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), invalidated the bankruptcy court system and that the referencing of eases from United States district courts to the bankruptcy courts pursuant to the Interim Rule, General Procedure Order No. 1983-1, also invalid and unconstitutional. Further, Peterson maintains that even if this case was properly removed from the district court to the bankruptcy court in New Mexico, the New Mexico bankruptcy court had no authority to lift the automatic stay. Peterson claims that relief from an automatic stay imposed by the statute, 11 U.S.C. § 362, must be obtained from the court in which the debtor filed his or her bankruptcy petition which, in this case would be the Bankruptcy Court in California. Thus, Peterson’s position is that the New Mexico Bankruptcy Court had no jurisdiction to lift the stay as to this litigation. He argues that the order lifting the stay had no effect, and that the trial therefore proceeded contrary to the stay. As a result he claims that the district court’s activities were null and void.
 

 He also says that, even if there was jurisdiction, he did not have an adequate opportunity to prepare for trial and that this was a deprivation of due process.
 

 We have studied this and conclude that the jurisdictional argument does not fill the bill. Peterson assumes that an automatic stay under 11 U.S.C. § 362 stays litigation as to co-defendants of the bankrupt. However, the Courts of Appeals have uniformly rejected such an interpretation of the automatic stay provisions of the Bankruptcy Act.
 

 
 *1330
 
 The Bankruptcy Act provides in pertinent part:
 

 (a) [A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ... or to recover a claim against the debtor that arose before the commencement of the case under this title....
 

 11 U.S.C. § 362. The language of the statute extends stay proceedings only to actions “against the debtor.” There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor.
 
 See Williford v. Armstrong World Indus., Inc.,
 
 715 F.2d 124 (4th Cir.1983);
 
 Wedgeworth v. Fibreboard,
 
 706 F.2d 541 (5th Cir.1983);
 
 Pitts v. Unarco Indus., Inc.,
 
 698 F.2d 313 (7th Cir.1983). The language of the statute reflects the legislative purposes behind the automatic stay. This is to permit the debt- or to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims.
 

 Congress has said:
 

 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.
 

 The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 340,
 
 reprinted in part in
 
 1978 U.S.Code Cong. & Ad.News 5787, 6297.
 

 It would make no sense to extend the automatic stay protections to solvent co-defendants. They don’t need it, and at the same time it would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent co-defendants. Extending the stay to protect solvent co-defendants would not advance either of the purposes underlying the automatic stay. Accordingly, we join the other circuit courts in concluding that 11 U.S.C. § 362 stays litigation only against the debtor, and affords no protection to solvent co-defendants.
 
 Williford v. Armstrong World Indus., Inc.,
 
 715 F.2d 124, 126-27 (4th Cir.1983);
 
 Wedgeworth v. Fibreboard Corp.,
 
 706 F.2d 541, 544 (5th Cir.1983);
 
 Austin v. Unarco Indus., Inc.,
 
 706 F.2d 1, 4-5 (1st Cir.1983);
 
 Pitts v. Unarco Indus., Inc.,
 
 698 F.2d 313 (7th Cir.1983);
 
 Lynch v. Johns-Manville Sales Corp.,
 
 710 F.2d 1194 (6th Cir.1983).
 

 Inasmuch then as the automatic stay as to Armstrong failed to extend to co-defendant Peterson, the trial court properly heard the claims against Peterson. We need not address, therefore, the constitutionality of the Interim Rule, or the proper source of an order lifting an automatic stay.
 

 Peterson’s due process argument also is rejected. This case was originally scheduled for trial on January 31, 1983. It had been pending for over two years, and the parties had several months notice of the originally scheduled trial date. Peterson had adequate time to prepare for trial. Armstrong’s filing for bankruptcy did not change this fact. Indeed, Armstrong’s filing for bankruptcy on the eve of trial gave Peterson’s attorneys additional time, in that it postponed the trial until February 2, 1983.
 

 
 *1331
 
 All in all, our conclusion must be that the trial court acted properly in hearing the case against Peterson.
 

 THE ALLEGATION THAT THE TRIAL COURT WAS IN ERROR IN ADMITTING EVIDENCE THAT CONSTITUTED INADMISSIBLE HEARSAY AND OPINION EVIDENCE LACKING FOUNDATION
 

 At trial, plaintiffs’ first witness was Dr. Fortier himself. Through him, plaintiffs introduced into evidence a number of documents, which plaintiffs claimed were business records kept by Dr. Fortier or by Peterson in connection with the transfer, ownership and operation of the Dona Anna Plaza. The trial court admitted the documents under the business records exception to the rule against hearsay. Fed.R.Evid. 803(6). Peterson challenges the admission of seventeen of these documents, contending that the documents constituted inadmissible hearsay and in some cases, expert opinions without the necessary foundation.
 

 A few basic principles apply to all evidentiary challenges on appeal. To preserve an evidentiary challenge for appeal, the opponent of the evidence must insure that the trial record reflects “a timely objection ... stating the specific ground of objection, if the specific ground is not apparent from the context.” Fed.R.Evid. 103(a)(1).
 
 See also, Whiteley v. OKC Corp.,
 
 719 F.2d 1051 (10th Cir.1983);
 
 Squyres v. Hilliary,
 
 599 F.2d 918 (10th Cir.1979);
 
 Sandoval v. United States,
 
 285 F.2d 605 (10th Cir.1960). The specific ground for reversal of an evidentiary ruling on appeal must be the same as that raised at trial.
 
 Market Service, Inc. v. National Farm Lines,
 
 426 F.2d 1123 (10th Cir.1970);
 
 Intermountain Rural Elec. Ass’n. v. Colorado Cent. Pwr. Co.,
 
 322 F.2d 516 (10th Cir.1963). Moreover, “[ejrror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected .” Fed.R.Evid. 103(a). We may affirm the rulings on admission of evidence if that evidence is admissible under any of the Federal Rules of Evidence; this court is not bound by the evidentiary basis relied upon by the trial court for the admission of the challenged evidence.
 
 See United States v. Provenzano,
 
 620 F.2d 985 (3d Cir.1980). Finally, we note that an evidentiary ruling will only be reversed upon a showing that the trial court abused its discretion.
 
 Rasmussen Drilling v. Kerr-McGee Nuclear Corp.,
 
 571 F.2d 1144 (10th Cir.1978).
 

 We are mindful of the above principles as we consider the evidentiary challenges urged by Peterson. Of the seventeen documents Peterson addresses on appeal, seven (plaintiffs exhibits 11, 161, 201, 205, 207, 209 and 210) were admitted into evidence without objections from any of the defendants. Thus, Peterson may not now raise objections to the admissibility of these seven exhibits.
 

 Peterson has also waived objection to another of the seventeen challenged exhibits because the ground for objection below was different from those urged now on appeal. Defendants objected to plaintiffs’ exhibit 211 on the ground that it was cumulative. On appeal, defendants challenge this evidence on the ground that it is hearsay and without foundation.
 

 Counsel for Peterson’s co-defendants objected below to four of the remaining exhibits, numbers 149, 199, 208 and 209, but objected only on behalf of their clients, seeking a ruling that the four documents could only be considered against Peterson. The trial court admitted the documents only against Peterson. The objections by the co-defendants were clearly not made on behalf of Peterson, and Peterson cannot now use the objections of his co-defendants to cure his own failure to object. Peterson did not object to any of these four documents, so any right that Peterson had in this regard may be considered waived.
 

 Only five of the documents were objected to specifically and only those will be considered on appeal.
 

 The first of these five is exhibit 129, a Subsurface Investigation Report (herein
 
 *1332
 
 after referred to as the “subsurface report”), which reflected work that had been performed for Peterson by the San Juan Testing Laboratory in 1976. The plaintiffs’ attorney established that Dr. Fortier obtained the document from the San Juan Laboratory when he arranged in 1979 for some soil testing on the Dona Anna Plaza site. The report was one of the documents Dr. Fortier kept in his files in connection with the Dona Anna Plaza. The trial court admitted the evidence as a business record, over defendants’ hearsay and foundation objections.
 

 Peterson’s foundation objection presumably relies on the provisions of the Federal Rules of Evidence that require authentication of documents and testimony from personal knowledge. Rule 602 provides that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.” Rule 901(a) provides that “[tjhe requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” Authenticity may be established by “[testimony of a witness with knowledge ... that a matter is what it is claimed to be.” Fed.R.Evid. 901(b)(1).
 

 It is argued by Peterson that Dr. Fortier lacked independent knowledge of the circumstances surrounding the making of the subsurface report and could not therefore lay the necessary foundation for the admission of the report. Peterson is correct, but the foundation error is not fatal to the case. Dr. Brewer, an expert witness on soil testing, foundation engineering and parking lot design, conducted the investigation reported in exhibit 129. He identified the subsurface report at trial and testified at length about the investigation and its results. Certainly, this testimony cured any authentication or foundation problem that may have existed when the report was first admitted.
 

 Peterson’s hearsay argument also fails. The subsurface report was admissible under a number of exceptions to the hearsay rule. The report contained “conditions” observed and “opinions” reached “at or near the time” of the report by Dr. Brewer, “a person with knowledge.” The report, which related to soil conditions and foundation requirements for the Dona Anna Plaza, was one of the records that Dr. Fortier kept in connection with his ongoing business of maintaining the shopping center. Thus the report is a “record of regularly conducted activity” under Fed.R. Evid. 803(6). The report also constituted a recorded recollection of the expert witness Brewer. Dr. Brewer and his staff conducted the tests embodied in the subsurface report in 1976, seven years before the trial in this case. Dr. Brewer referred to the report during his testimony, which enabled him to testify fully and accurately on the subjects contained therein. Therefore, the report fit within the “recorded recollection” exception to the hearsay rule. Fed.R.Evid. 803(5).
 

 There is an additional reason that we reject Peterson’s evidentiary challenge, and that is that there is a failure to demonstrate that the evidence affected a “substantial right.” Fed.R.Evid. 103(a). Dr. Brewer and others testified at length about the soil conditions underlying the Dona Anna Plaza parking lot. The documentary evidence was, at worst, cumulative. Peterson has thus failed to show that he was prejudiced by the admission of the subsurface report.
 

 A letter dated September 8, 1977, from the Vice President of Bellamah Corp. (one of the defendants) to Peterson regarding the Dona Anna Plaza is marked exhibit 152. Plaintiff received the document during discovery, and placed it in his files. Defendant objected to the admission of the letter on foundation grounds.
 

 If there was an inadequate foundation for the admissibility of the letter, such defect was cured by plaintiffs’ subsequent questioning of Peterson at trial. Both Peterson and his brother identified the letter, establishing its authenticity and the condi
 
 *1333
 
 tions surrounding its receipt. Therefore it cannot be said that there is a lack of foundation in accordance with Federal Rules of Evidence 602 and 901,
 
 supra.
 
 It is noteworthy that defendants at trial failed to object to the evidence on the ground that it constituted inadmissible hearsay. We will not address this contention on appeal.
 
 Whiteley v. OKC Corp.,
 
 719 F.2d 1051, 1057 (10th Cir.1983);
 
 Sandoval v. United States,
 
 285 F.2d 605 (10th Cir.1960).
 

 Plaintiffs’ exhibit 197 consists of correspondence between Peterson and the Fortiers’ attorney regarding the execution of Supplemental Escrow Instructions. The exhibit also includes several copies of Supplemental Escrow Instructions, signed by the parties, which were never used. Dr. Fortier testified that he kept all records regarding the Dona Anna Plaza in his files, and that he filed this correspondence, which he received from his attorney. The trial court admitted the documents over defendants’ hearsay objection on the ground that the documents were business records of Dr. Fortier under Fed.R.Evid. 803(6).
 

 We conclude that the trial court acted properly in receiving these documents. Dr. Fortier’s attorney, Brad Millikan, who prepared or received the documents, was acting on Fortier’s behalf in connection with the shopping center business and knew about the transactions at issue. Dr. Fortier testified that he kept records of all correspondence and documents concerning his shopping center business. Dr. Fortier testified further that plaintiffs’ exhibit 197 was one of the documents he received from his agent, Mr. Millikan, and which he filed according to his business practice. Accordingly, the trial judge properly admitted the exhibits under Federal Rule of Evidence 803(6).
 

 Plaintiffs’ exhibit 198 was a letter that was sent by Fortier’s attorney to Peterson calling attention to the defective parking lot at the Dona Anna Plaza. The trial court admitted the letter for the limited purpose of showing that the parties did not agree to a proposed mutual release from liability. Defendants objected to the admission of the evidence on the ground that the letter itself was hearsay, and that the contents of the letter reflected additional hearsay.
 

 The trial court properly admitted the letter for a limited purpose which did not relate to the hearsay contents. The letter was admitted merely to show that at the time the letter was written Fortier did not agree to release Peterson from liability. The letter was not admitted to prove the allegations of defective work on the parking lot. Thus, the letter as admitted did not constitute hearsay. We note, however, that even if the letter was improperly admitted, Peterson has not shown prejudice by it. There was ample testimonial, docú-mentary and photographic evidence demonstrating the problems with the parking lot. The contents of this letter were merely cumulative, and were insignificant in light of more damaging evidence on this issue.
 

 Plaintiff’s exhibit 204 is a letter from T. Brown Constructors, Inc. to Dr. Fortier, setting forth alternative means of correcting the parking lot problems and giving estimated costs for each of the repair options. This was admitted over defendants’ hearsay and foundation objec-' tions, as a business record under Federal Rule of Evidence 803(6). Subsequently, when the jury was out of the courtroom, defendants renewed the objection and the trial court reconsidered its prior ruling. When the jury returned, the trial court instructed them that the evidence was stricken from the record and that the jury was to disregard it. This item certainly was not a significant bit of evidence and thus we must assume that the jury obeyed the court’s instructions and disregarded all references to exhibit 204.
 
 Rasmussen Drilling v. Kerr-McGee Nuclear Corp.,
 
 571 F.2d 1144, 1155 (10th Cir.1978);
 
 United States v. Pennett,
 
 496 F.2d 293 (10th Cir.1974).
 

 In summary then, the evidentiary matters raised by Peterson do not dictate that there should be reversal in this case. Of
 
 *1334
 
 the seventeen evidentiary objections raised by Peterson on appeal, twelve were waived because the challenged evidence was not the subject of timely or specific objections. Of the remaining five matters, one was the subject of a successful motion to strike, and the jury was instructed to disregard the evidence. The four documents subject to review were properly in evidence and, in any event, could not have affected Peterson’s substantial rights.
 

 THE MOTION OF PETERSON FOR A DIRECTED VERDICT ON THE NEGLIGENCE CLAIMS
 

 The argument of Peterson is that the Fortiers’ negligence claims were based on the theory that Peterson failed to supervise the architect and workers in the design and construction of the lot. Peterson claims that the trial court should have granted a directed verdict for him on this negligence claim because, at the time of the design and construction of the shopping center, Peterson owed no duty of care to the Forti-ers. Furthermore, Peterson argues, even if he had a duty of care during the construction phase, he allegedly had no power under New Mexico law to supervise the architect and the contractors. Therefore, this issue ought not to have gone to the jury. He claims, further, that he was clearly prejudiced because the jury allegedly awarded the Fortiers damages based only on the negligence theory. Thus, Peterson seeks reversal of the judgment below and remand of the ease to the trial court with orders to enter judgment in Peterson’s favor.
 

 Peterson is asking this court to grant him a judgment notwithstanding the verdict even though he made no such request of the trial court. This court has no authority to direct a verdict contrary to that of the trial court where, as here, the complaining party has not given the trial court an opportunity to first correct its own error.
 
 See Globe Liquor Co. v. San Roman,
 
 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1948);
 
 Cone v. West Virginia Pulp & Paper Co.,
 
 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947);
 
 see also
 
 5A J. Moore, Moore’s Federal Practice ¶ 50.08 (2d ed. 1984).
 
 Cf. Neely v. Martin K. Eby Constr. Co.,
 
 386 U.S. 317, 324, 87 S.Ct. 1072, 1077, 18 L.Ed.2d 75 (1967). As a result the only relief available to Peterson, if he prevails on this issue, is a new trial.
 
 See, e.g., Lenard v. Argento,
 
 699 F.2d 874 (7th Cir.),
 
 cert. denied,
 
 — U.S. -, 104 S.Ct. 96, 78 L.Ed.2d 84 (1983);
 
 United States v. Valdosta-Lowndes County Hosp. Auth.,
 
 696 F.2d 911 (11th Cir.1983);
 
 Jackson v. Seaboard Coast Line R. Co.,
 
 678 F.2d 992 (11th Cir.1982).
 

 New Mexico has never squarely considered the question of whether a real estate developer who exercises some control over the practices of his or her contractors owes a duty of care to the subsequent purchaser of the developed area. Accordingly, we must look to case law in New Mexico and to other relevant sources to determine how the New Mexico Supreme Court would rule under these circumstances. We take note that “the views of the District Court interpretive of New Mexico laws carry extraordinary force on appeal where there are no controlling state decisions providing clear precedent.”
 
 Hartford v. Gibbons & Reed Co.,
 
 617 F.2d 567, 569 (10th Cir.1980);
 
 Rasmussen Drilling v. Kerr-McGee Nuclear Corp.,
 
 571 F.2d 1144, 1148 (10th Cir.1978). Moreover, “[A]n appellate court is not called upon to decide whether the Trial Court reached the correct conclusion of law, but only whether it reached a permissible conclusion.”
 
 United States v. Hunt,
 
 513 F.2d 129, 136 (10th Cir.1975);
 
 Hodgson v. Okada,
 
 472 F.2d 965 (10th Cir.1973).
 

 This court cannot say, in light of this standard, that the trial court erred in its interpretation of New Mexico law. New Mexico has clearly recognized that a building contractor owes a duty of care to subsequent purchasers of the property on which the contractor has worked.
 
 Steinberg v. Coda Roberson Constr. Co.,
 
 79 N.M. 123, 440 P.2d 798 (1968). Equally clear is the proposition that, although as a general rule a contractor is responsible for
 
 *1335
 
 injuries resulting from defects in his or her work, if the owner discovers or has knowledge of the defect, the owner’s responsibility may supersede that of the contractor.
 
 Baker v. Fryar,
 
 77 N.M. 257, 421 P.2d 784, 786 (1966);
 
 Tipton v. Clower,
 
 67 N.M. 388, 356 P.2d 46, 49 (1960) (“the contractor should not be liable if he merely carefully carried out the plans, specifications and directions given him, at least where the plans are not so obviously dangerous that no reasonable man would follow them and ... if the owner discovers the danger, or it is obvious to him, his responsibility supersedes that of the contractor.”) These two cases can be read together to mean that an owner has no independent duty of care to a subsequent purchaser in connection with work performed for the owner by an independent contractor. Once the owner directs or supervises the work of an independent contractor or otherwise discovers that the work is inadequate, however, the owner has a duty to future owners to use reasonable care in assuring that the work is performed in a reasonably careful manner. In other words, once an owner assumes a supervisory function, he or she has a duty to perform that supervisory function with reasonable care. This is in substance the interpretation of New Mexico law made by the trial court, as reflected in the court’s instructions to the jury.
 

 Peterson cites other New Mexico case law in support of his contention that, if the owner has no right to supervise the work of a contractor, the owner has no duty of care to third parties arising out of defects in the contractor’s performance. The cited cases deal with an owner’s liability to employees of the contractor who are injured on the job. New Mexico appears to recognize a limited duty of an owner to provide the employees of an independent contractor with a “safe place to work.”
 
 Harmon v. Atlantic Richfield Co.,
 
 95 N.M. 501, 623 P.2d 1015 (Ct.App.1981). The mentioned duty extends to the “facilities” of the owner, but “does not include the equipment of the independent contractor.”
 
 Harmon,
 
 623 P.2d at 1018 (quoting
 
 Fresquez v. Southwestern Ind. Co. & Riggers, Inc.,
 
 89 N.M. 525, 554 P.2d 986 (Ct.App.1976)). In
 
 Harmon,
 
 however, the court held that if the contract between the owner and the contractor divests the owner of the right to control the contractor’s operations, the owner has no duty to the contractor’s employees to provide a “safe place to work.”
 
 Harmon v. Atlantic Richfield Co.,
 
 95 N.M. 501, 623 P.2d 1015 (Ct.App.1981). The
 
 Harmon
 
 court drew a distinction between “a designation of the work to be done” and “control of the work to be done.” Designation, without control, cannot give rise to an owner’s liability for employee injuries on the worksite. If, however, the owner “descended to the details or to the means and methods of performance of the independent contractor, a master-servant relationship would be created.”
 
 Harmon,
 
 623 P.2d at 1020. Under these circumstances, the owner would be liable, as an employer, to employees of the contractor who were injured on the job.
 

 We must disagree with Peterson that
 
 Harmon
 
 precludes negligence liability in the case at bar.
 
 Harmon
 
 and the other cited cases do not address the duty of care of real estate developers to subsequent purchasers. Indeed, the cases do not even concern the ultimate quality of the work done on the construction project. The cases merely define the scope of the employment relationship in order to determine who has the responsibility to provide a “safe place to work” during the course of the construction.
 
 Harmon,
 
 623 P.2d at 1018. Duties of care in the employment context are unique in the law. This is owed in part to the existence of worker’s compensation. Duties to other third parties arising out of the ultimate quality of the work, rather than the safety of the workplace, are not really analogous.
 

 Furthermore, to the extent that the cited cases are analogous to the case at bar, they support the trial court’s conclusion of law in this case.
 
 Harmon
 
 recognizes that, notwithstanding contract provisions vesting all control and duty in the contractor, if the owner actually does control day-to-day
 
 *1336
 
 functions, the owner may assume some liability.
 

 Hence, our holding is that the trial court reached a permissible conclusion of law in the area of negligence. Real estate developers who have no influence on the design and construction of the development have no duty to subsequent purchasers. Once the developer assumes control over the design and construction, however, he or she owes a duty of care in the exercise of that control. The developers who actually supervise and instruct contractors on the work to be performed or who know of defects may not escape liability when their actions or omissions contribute to a negligent product. A contract provision divesting the owner of a right to control a contractor’s activities, if ignored by both parties, cannot shield the owner from liability for the negligent exercise of the supervision actually undertaken. The jury instructions adequately expressed this rule of law.
 

 In considering the facts of this case, the trial court properly submitted the negligence issue to the jury. There was evidence that Peterson instructed the architect to disregard the San Juan Laboratory’s recommendations for the design of the parking lot and that Peterson ordered Bellamah to proceed with the architect’s plans. Peterson’s brother, acting as construction coordinator, allegedly supervised much of the construction of the parking lot. Thus, the jury could reasonably find that Peterson, by his acts and omissions, breached a duty to the Fortiers which he assumed by undertaking a supervisory role in the construction of the Dona Anna Plaza parking lot.
 

 DID THE TRIAL COURT ERR IN ENTERING A JUDGMENT INCONSISTENT WITH THE JURY’S VERDICT
 

 In special interrogatories, the jury was asked which party prevailed on each of the theories of liability. The response was that the plaintiffs had prevailed on their negligence claims against Peterson and Armstrong (the architect), and on their breach of contract and constructive fraud claims against Peterson. The jury then gave the following responses to the special interrogatories:
 

 If you have found in favor of plaintiffs Fortier on any of their claims against any defendant, answer Question 9.
 

 9. Without reducing the amount for any contributory negligence you may have found, what amount of damages will compensate the plaintiffs for the injuries they have sustained?
 

 $305,072.30
 

 If you have found that any of the persons or entities in Question 1 were negligent, answer Question 10. If not, proceed to Question 12.
 

 10. Taking into account the Court’s instructions on damages and the relative fault of each person or entity, assign a dollar amount to each person or entity whom you have found to be negligent. The total of the figures you assign must equal your answer to Question 9. If you have answered “No” as to any part of Questions 1 and 2, you must answer “$0” on the line below relating to the person or entity whom you have not found to be negligent.
 

 Peterson maintains that these responses to the special interrogatories show that the jury assessed damages against him only on the negligence claim. Peterson contests the trial court’s judgment against him in the amount of $244,057.84. His claim is that the judgment entered was inconsistent with the jury verdict inasmuch as it ignored the jury’s assessment of the Fortier’s contributory negligence, and therefore deprived him of the right to trial by jury.
 
 *1337
 
 The district court allegedly denied Peterson’s motion to amend the judgment to conform to the verdict.
 

 We are unable to. agree that the jury attributed all damages to the negligence claim. The special interrogatories did not ask the jury to determine the amount of damages sustained by plaintiffs on each claim. Instead, the interrogatory form sought the total damages sustained, without reference to the theory of recovery. The interrogatories then asked for an allocation of fault and resultant liability under the negligence cause of action. Peterson cannot convince this court that an arguable ambiguity in the special verdict form mandates a finding in his favor on this issue.
 

 Federal Rule of Civil Procedure 49(a) governs the use of special interrogatories in jury trials in the federal courts. Under Rule 49(a), if in submitting the special interrogatories to the jury
 

 “the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding ....”
 

 See generally, Merrill v. Beaute Vues Corp.,
 
 235 F.2d 893, 897 (10th Cir.1956); 5A J. Moore, Moore’s Federal Practice ¶ 49.03[4],
 

 In the present case, the special interrogatories asked the jury to determine which parties prevailed on each of the For-tiers’ claims. The special interrogatories also asked the jury to determine the amount of damages, if any, sustained by the Fortiers. The court omitted, however, the allocation of the total amount of damages among the various claims. Peterson approved the special interrogatory form in its entirety, and did not request the submission of the allocation issue. Therefore, he waived his right to a jury trial on the allocation issue. In entering its judgment against Peterson, the trial court implicitly determined that all damages assessed against Peterson were attributable to the breach of contract and constructive fraud claims. Accordingly, the court did not reduce the damages by the amount of the Fortiers’ contributory negligence, because contributory negligence has no place in contract and fraud actions.
 
 See Neff v. Bud Lewis Co.,
 
 89 N.M. 145, 548 P.2d 107 (Ct.App.),
 
 cert. denied,
 
 89 N.M. 321, 551 P.2d 1368 (1976).
 

 The finding of the trial court on a factual issue absent from the special interrogatory form is subject to review pursuant to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a).
 
 Murtagh v. University Computing Co.,
 
 490 F.2d 810 (5th Cir.),
 
 cert. denied,
 
 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 62 (1974);
 
 Carter v. Aetna Cas. & Sur. Co.,
 
 473 F.2d 1071 (8th Cir.1973).
 
 See generally,
 
 5A J. Moore, Moore’s Federal Practice ¶ 49.03[4]. From a review of the record in this case, it is impossible to say that the trial court clearly erred in finding that the damages assessed against Peterson were attributable to the contract and fraud claims.
 

 DID THE TRIAL COURT ABUSE ITS DISCRETION IN AWARDING ATTORNEYS FEES, COSTS AND EXPENSES TO THE FORTIERS
 

 Peterson argues that New Mexico law, which applies to this diversity case, prohibits the award of attorneys fees and non-statutory expenses as costs.
 
 Citing Aboud v. Adams,
 
 84 N.M. 683, 507 P.2d 430 (1973). A successful plaintiff may recover attorneys fees in a breach of contract ease, however, if the contract so provides.
 
 Lujan v. Gonzales,
 
 84 N.M. 229, 501 P.2d 673 (Ct.App.),
 
 cert. denied,
 
 84 N.M. 219, 501 P.2d 663 (1972). The contract at issue here provided:
 

 In the event there is a default under this agreement and it becomes reasonably necessary for either party to employ the services of an attorney in connection therewith, either with or without litigation, the losing party to the controversy arising out of the default shall pay to the successful party a reasonable attorney’s fee and, in addition, such costs and ex
 
 *1338
 
 penses as are incurred in enforcing or in terminating this agreement.
 

 Peterson contends that this clause does not allow an attorneys fee award in this case because the attorneys fees here were not incurred in “enforcing” the agreement. According to Peterson, the repairs sought in the action far exceeded those required by the contract. Moreover, Peterson claims as he did above that the jury only assessed damages on the negligence claim, so that the Fortiers should not receive attorneys fees and expenses on the basis of the contract claim. Finally, Fortier argues, the trial court abused its discretion in determining the amount of attorneys fees and expenses awarded.
 

 We have already rejected Peterson’s contention that the plaintiff prevailed only on the negligence claim. The jury clearly held for the Fortiers on the contract claim. By the terms of the contract between the For-tiers and Peterson, in the event that a “default” by one of the parties reasonably necessitates the employment of “the services of an attorney in connection therewith,” the “losing party” must pay the “winning party” attorneys fees, costs and expenses “incurred in enforcing” the contract. This clause appears to apply to this successful action by Fortier against Peterson for breach of the contract. We decline to adopt Peterson’s hypertechnical interpretation of “enforcing,” especially in light of the fact that Peterson’s attorney drafted the contract. Any ambiguities in the interpretation of the attorney fee clause of the contract ought to be construed against the drafter.
 
 See Smith v. Tinley,
 
 100 N.M. 663, 674 P.2d 1123 (1984);
 
 Manuel Lujan Ins., Inc. v. Jordan,
 
 100 N.M. 573, 673 P.2d 1306 (1983).
 

 Peterson may be held responsible under the contract for attorneys fees and expenses reasonably incurred in connection with the breach of contract claim. The contract does not provide, however, that attorneys fees may be assessed for prosecution of claims not arising under the contract. Thus, the “American Rule” applies to those non-contract claims, and each party must bear its own attorneys fees and expenses.
 
 See Hensley v. Eckerhart,
 
 461 U.S. 424, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983);
 
 Alyeska Pipeline Serv. Co. v. Wilderness Society,
 
 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Peterson may not, therefore, be held liable for attorneys fees and expenses incurred in connection with the Fortiers’ negligence and fraud claims.
 

 The trial court below ordered the award of attorneys fees in the amount of $184,323.73 and costs and expenses in the amount of $78,018.15. The attorneys fees award represents the total amount of money claimed by the Fortiers for the services of the law firm of Moses, Dunn, Beckley, Espinosa and Tuthill.
 
 [2]
 

 The itemized explanation of the amount claimed shows that some of the attorneys fees and costs sought by the Fortiers were incurred in connection with the claims against Peterson’s co-defendants or in connection with Fortier’s non-contract claims against Peterson. These fees are not subject to the contractual agreement to pay attorneys fees incurred incident to the contract claim. It appears that the trial court’s award of attorneys fees was somewhat excessive.
 

 This case is remanded to the district court with directions to determine the amount of attorneys fees. As noted above the parties contracted for the allowance of attorneys fees to the prevailing party with respect to the contract only.
 

 Accordingly the trial court is directed to limit the award of attorneys fees to those which are attributable to the preparation and trial of the contract claim. The trial court shall also ascertain the award of attorneys fees payable to the plaintiffs for the benefit of its attorneys, both in the trial court and in this court. The trial court
 
 *1339
 
 is also directed to award costs which arose from the trial.
 

 The clerk of this court has determined that the costs which are attributable to this appeal are taxed by it. The amount awarded is $165.28.
 

 Subject to the specific changes as written above, the judgment of the district court as to the other matters is affirmed.
 

 [1]
 

 . The trial court assessed $61,104 against Armstrong, and the balance of the judgment, $244,-057.84 against Peterson.
 

 [2]
 

 . The trial court properly disallowed claims of attorneys fees for the Millikan & Thomas law firm, which represented Fortier during the original contract negotiations but did not render services in connection with this litigation.