**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry B. GROOVER, Defendant-Appellant.**

**No. 91-4022.**

United States Court of Appeals, Tenth Circuit.

Feb. 26, 1992.

Peter Stirba (Barbara Zimmerman, with him, on the briefs), Stirba and Hathaway, Salt Lake City, Utah, for defendant-appellant.

Stewart C. Walz, Asst. U.S. Atty. (Dee Benson, U.S. Atty., Richard Parry, Asst. U.S. Atty., with him, on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before HOLLOWAY and SETH, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Four issues are argued by appellant, Larry B. Groover, a financial consultant who sold "investment products" to clients and was convicted on all five counts of an indictment alleging fraud in connection with his investment business.[1]

Appellant contends:

1. That the prosecutor misdescribed a stock certificate as a stock power, and that such error constituted "prosecutorial misconduct;"

2. That the trial court improperly admitted evidence of an unrelated investigation of appellant by the Securities and Exchange Commission (SEC);

3. That the trial court should have dismissed counts II through V as multiplicitous; and

4. That the trial court should have admitted evidence of an unrelated merger transaction involving Dr. V.B. Joshi, so as

---

* The Honorable Edward Dumbauld, United States Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. Count I charged conspiracy under the general conspiracy statute, 18 U.S.C. § 371; Count II, securities fraud in violation of 15 U.S.C. § 78j(b), 17 C.F.R. 240.10b–5, 15 U.S.C. § 78 ff. and 18 U.S.C. § 2(a) and (b) [section 2 punishes as a principal one who procures or causes commission of a criminal act]; Count III, securities fraud in violation of 15 U.S.C. § 77q(a), 15 U.S.C. § 77x, and 18 U.S.C. §§ 2(a) and 2(b); Count IV, fraudulent concealment in violation of 18 U.S.C. § 1001; and Count V, mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. §§ 2(a) and 2(b).

to create the impression that Dr. Joshi was the moving spirit in the merger transaction in which he and the appellant took part, thereby exculpating appellant.

Finding these contentions unconvincing, we affirm.

To elucidate appellant's contentions it will be necessary to detail his *modus operandi* as a seller of "investment products." In 1984 he bought in his own name two mineral leases (of gold mines in California) and an oil lease in Kansas, at a total price of $1,563,150.00.

Appellant caused a corporation (Golden City Exploration, hereinafter Golden City) to be formed by his employees or straw men, taking particular care to see that Groover's name or his connection with the company did not come to light. As the reason for this secrecy he said he was being investigated by the SEC with respect to unrelated matters. Some of Groover's straw men did not even know at the time that they were stockholders of Golden City. Groover had them transfer their stock certificates to him by signing an endorsement on the back of the certificates or by signing a separate stock power. In any event Groover controlled Golden City. He had fabricated minutes of corporate meetings prepared to make it look as if Golden City were a lawfully organized and genuinely functioning legitimate corporation. Actually, no such meetings were held.

Appellant then sold portions of his gold and oil leases to Golden City at an inflated price of $1,680,000.00. The ostensible seller was Spring Creek, a company wholly owned by Groover and his wife. But appellant concealed his self-dealing in this transfer of assets to Golden City.

Groover then effected a merger of Golden City with a company called A.D. Duncan Development, Inc. and changed the name of the merged company to G.C. Technologies.

In reliance on an audit by one Marvin Haney (an employee of Groover, not an independent auditor) an SEC Rule 15c 2–11

package was provided to investors, and a National Quotation Bureau form 211 was prepared, to enable sales to be made of G.C. Technologies stock through use of National Quotation Bureau's "pink sheets."

Groover also offered to trade G.C. Technologies stock for diamonds which he had previously sold to investors. One customer, Ed Nordquist, whose diamonds Groover thus acquired, never received the overvalued stock. This transaction was the basis for Count V of the indictment.

With this background, we proceed to consider the four errors assigned by appellant.

## I. ALLEGED INACCURACY IN PROSECUTOR'S OPENING STATEMENT

■ In the first place, a technical or trivial inaccuracy of this type would be negligible and unimportant, since the trial Judge clearly and repeatedly instructed the jury that the opening statements and other comments by the lawyers trying the case were not to be considered as evidence.[2]

Furthermore, in legal effect signing an endorsement of transfer on the back of the stock certificate and signing a separate stock power are in practice equivalent and equally effective means of transferring shares. Whichever method of transfer was used, ownership of the stock was obtained by Groover. No harm to him was possible even if such a misstatement by the prosecutor occurred.

Finally, with respect to Exhibit 5–A which forms the peg upon which appellant's argument hangs, there was nothing which could be properly characterized as "prosecutorial misconduct."

The record shows that when the prosecuting attorney Stewart Walz, Esq. showed exhibit 5–A to the witness Sandra K. Kirkendall[3] he said:

Q. And handing you what has been marked for identification as plaintiff's Exhibit 5A, is that one of the stock certificates that you prepared?

---

**2.** Transcript of trial record (hereinafter "R"). See *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1154 (10th Cir.1978).

**3.** Who was secretary to Joe Cook [one of Groover's straw-men R. V, 139, 142 (11/7/89).

A. Yes.

   *      *      *      *      *      *

MR. STIRBA: No objection, your honor.
THE COURT: Very well. 5A and 5B are received.[4]

This plainly shows that when 5–A was received in evidence Walz described it as a stock certificate. This is not even a mistake or inaccuracy, much less improper prosecutorial conduct.

## II. UNRELATED SEC INVESTIGATION INVOLVING GROOVER

This contention of Groover's clearly is based upon a non-event. Appellant's Brief, p. 17, concedes that this evidence "was never really introduced at all."[5] Appellant's discussion of the circumstance under which evidence of prior offenses is admissible under Rule 404(b) FRE is utterly beside the point. The government made no effort to prove past offenses in the instant action.

■ The government's object was to prove that Groover took pains to see that his name did not appear in any manner in connection with Golden City's affairs. Witnesses testifying on that point naturally discussed the reason Groover had given them in order to justify the secrecy which he apparently considered vital to his plans to transfer the gold mines and oil well to Golden City. The ostensible reason was the pendency of unrelated SEC investigations in which he was involved.[6] Groover's ostensible state of mind is the only thing that this SEC activity was pertinent to. It was not even hearsay as it was not offered for the truth of its contents.[7]

4. R. V, 167 (11/7/89).

5. Appellant argues that the unrelated SEC investigation dealt with companies "in which Mr. Groover only played a small part."

6. See *e.g.* testimony of Kerry Allen Huntington, who acted for Groover as president of Golden City, R. V, 5, 12–14 (11/8/90).

7. See Rule 801(c) FRE.

8. This is the charging part of Count I, alleging that Groover did knowingly and willfully conspire with other persons known and unknown to the Grand Jury to commit four specified offenses against the United States. Counts II through V each charge one of these four specified offenses.

Moreover, if this testimony had any impact on Groover's guilt, it was exculpatory rather than prejudicial, as it tended to show a rational motive for Groover's secretiveness other than the purpose of facilitating the fraud on investors to be effectuated through his self-dealing with Golden City.

This claim of trial error is clearly untenable.

## III. ALLEGED MULTIPLICITY OF COUNTS II–V

■ Appellant's next contention is that Counts II through V are multiplicitous because they incorporate by reference certain positions of Count I. Count I charges violation of the general conspiracy statute. It contains several headings: (1) Introduction; (2) The Conspiracy[8]; (3) Object and Furtherance of the Conspiracy; (4) (Overt Acts.

Counts II through V each begin with an identical numbered paragraph 1. stating that:

> The Grand Jury realleges and incorporates the Introduction, Object and Furtherance of the Conspiracy, and Overt Acts portions of Count I of this Indictment as though fully set forth herein.[9]

It will be noted that the charging part in heading (2) of Count I as summarized above[10] is *not* realleged nor incorporated by reference in the subsequent counts.

It is thus plain that there exists no duplicity in the Indictment. Count I charges conspiracy (in violation of the general conspiracy statute, 18 U.S.C. § 371[11]) to com-

9. This section in Count II appears in Addendum to Amended Brief of Appellant, at p. 12; of Count III, at pp. 12–13; of Count IV, at p. 13; of Count V, at p. 14.

10. See note 8, *supra.*

11. This statute provides that:
> *If two or more persons conspire* either *to commit any offense against the United States,* or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of the conspiracy,* each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
> If, however, the offense, the commission of which is the object of the conspiracy, is a

mit the four specified offenses against the United States enumerated in paragraphs (A). (B), (C), and (D) of the charging portion of Count I.

Count II charges commission of the substantive offense specified in paragraph (A). Count III charges commission of the substantive offense specified in paragraph (B). Count IV charges commission of the substantive offense specified in paragraph (C). Count V charges commission of the offense specified in paragraph (D).

Though these substantive crimes are of a complicated economic and corporate nature, designed to protect investors against fraud, they are completely distinct from the crime of violating the long familiar general conspiracy statute.

Legally the situation is just the same as the more familiar one now clogging the courthouses of the land, where an indictment in a drug case charges separately (1) conspiracy to sell drugs, and (2) selling drugs.

There is no merit in this contention argued by Groover.

## IV. UNRELATED MERGER TRANSACTION INVOLVING JOSHI

■■■■ We turn to Groover's final contention namely that he should have been permitted to develop the details concerning an unrelated merger transaction involving Dr. V.B. Joshi.

Groover argues that Dr. Joshi rather than Groover had control of Golden City Technologies because a year previously Joshi had engaged in a merger having a similar pattern to the merger creating Golden City Technologies.

Groover emphasizes that there are "overwhelming similarities" between the Golden City Technologies transaction (in which both Groover and Joshi were involved) and the one a year before in which Joshi combined a privately held company, White Mesa Exploration, and "a publicly traded

shell corporation," thereby creating SMG Technologies.

Other resemblances were that the same lawyer, Gerald Conder, prepared the documents for the SMG Technologies merger, and for the Golden City Technologies merger. Also the same "market maker," Edward Brown, was used in both cases. There was a four for one stock split in both cases, and an exchange of stock for assets in both cases. The incorporators of White Mesa in the SMG merger were shareholders in A.D. Duncan, as was Donnell Ramsey a shareholder in White Mesa. Joshi signed the 15 C 2–11 package in both mergers to list the stock for sale in the "pink sheets." [12]

The circumstances enumerated above do not suffice to negate Groover's control through stock ownership of the companies used by him in his corporate manipulations.

Doubtless many leveraged buyouts in which the notorious Michael Milken or the Drexel firm participated followed a similar pattern, but each deal involved its own parties. Use of the same boiler plate documents or the same law firm does not negate the separate identity of the parties arranging a particular transaction.

The voluminous materials composing appellant's offer of proof, contained in addenda to appellant's brief, appear to be quite unrelated to the case being tried in the District Court and could serve only to cumber the record and confuse the jurors.

■■■ We find no error or abuse of discretion in the trial judge's ruling to exclude the proffered evidence. The settled rule is that rulings of the trial court with respect to the admissibility *vel non* of evidence will not be disturbed on appeal in the absence of abuse of discretion. *U.S. v. Rodriguez–Pando,* 841 F.2d 1014, 1021 (10th Cir.1988); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1331 (10th Cir.1984); *Rasmussen Drilling Inc., v. Kerr–McGee Nu-*

---

misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. [Italics supplied]

**12.** Appellant's amended brief, pp. 22–23.

*clear Corp.,* 571 F.2d 1144, 1155 (10th Cir. 1978).

Accordingly, none of appellant's adduced grounds for reversal proving meritorious, the judgment of the District Court is

AFFIRMED.