CHRISTOPHER B. LATHAM, JUDGE
This dispute arises from harassing and provocative text messages sent during a span of four-and-a-half months in 2015. Between March and July 2015, plaintiff Joel Plys and his friends received over 20 disparaging text messages from more than 12 different cellphone numbers. They were almost exclusively about Plaintiff's daughter's paternity.[1] Through personal investigation *171 and manipulation of his social media access settings, Plaintiff came to understand that debtor-defendant Danilo Geronimo Ang, Jr. was responsible. He reported this to the La Mesa Police Department. A police detective questioned Defendant, who confessed to sending the texts. The harassing messages then abruptly stopped.
Plaintiff and his wife, Jackie Plys, sued Defendant in small claims court. That court awarded them $10,150. Defendant appealed. Following a trial de novo, the San Diego Superior Court affirmed the judgment and tacked on $1,354 in additional costs and attorney's fees. Within a week, Defendant and Svea Fujiko Komori (collectively, "Debtors") filed for Chapter 13 bankruptcy.
Plaintiff initially sought a nondischargeability finding of the state court judgment under §§ 523(a)(2), (a)(4), and (a)(6).[2] But he brought his complaint nearly two months after Rule 4007's deadline for asserting such claims. So the court dismissed them. It, however, allowed Plaintiff to pursue a nondischargeability judgment under § 1328(a)(4), which was not time-barred. It also dismissed Ms. Komori as a defendant. The court now holds the entire state court judgment nondischargeable under § 1328(a)(4).
I. JURISDICTION AND VENUE
The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).
II. OVERVIEW AND HISTORY
A. The State Court Litigation
The Plyses sued Defendant in small claims in December 2015. Case No. 37-2015-00326756-SC-SC-CTL.[3] Initially, that court awarded them $10,000 in damages and $150 in costs, but it vacated the judgment. Id. After a new trial, the small claims court entered a judgment identical to the earlier one. See id. Defendant appealed to the San Diego Superior Court, which found the appeal lacked substantial merit and was not filed in good faith. Id. ; see also Plaintiff's Trial Ex. E. It therefore affirmed the small claims judgment and augmented it as follows: (1) $5,000 to both Plaintiff and Ms. Plys ($10,000 total); (2) $466.23 in pre-judgment costs; and (3) $1,000 in attorney's fees. Plaintiff's Trial Ex. E (the "State Court Judgment").
B. Defendant's Bankruptcy Case
Debtors filed a voluntary Chapter 13 petition seven days after the State Court Judgment was entered (Bankr. ECF No. 1). They disclosed the Plyses' $10,000 unsecured claim on their Schedule E, characterizing it as disputed (Bankr. ECF No. 11, p. 19). And their Statement of Financial Affairs listed the state court action as pending. (id. , p. 30). The court sent a notice of the bankruptcy filing to the Plyses the following day (Bankr. ECF No. 10). It informed them that the deadline to file a complaint challenging the dischargeability of debts under §§ 523(a)(2) and (a)(4) was April 4, 2017.[4]
*172 C. The Adversary Proceeding
Plaintiff brought his initial adversary complaint on May 24, 2017 (ECF No. 1) seeking to hold the State Court Judgment nondischargeable under §§ 523(a)(2), (a)(4), and (a)(6) (id. ). And he requested that a trustee investigate whether grounds exist to deny Debtors' discharge under § 727(c)(2) (id. ). Debtors moved to dismiss the complaint as untimely under Rule 4007 (ECF No. 5). The court agreed and dismissed Plaintiff's claims (ECF No. 8).[5] But it did so without prejudice as it appeared the complaint might be cured by amendment (id. ). Specifically, the court explained that § 1328(a)(4) has language very similar to § 523(a)(6)'s, but the former was not subject to the April 4 filing deadline (id. ). See also FED. R. BANKR. P. 4007(b) ("A complaint other than under § 523(c) may be filed at any time.").[6]
Plaintiff accordingly amended his complaint to seek a nondischargeability finding under § 1328(a)(4) (ECF No. 10). Debtors' answer asserted that Ms. Komori was wrongly named as a defendant (ECF No. 15).[7] They explained she was not a party to any of the state court proceedings. At the November 15, 2017 pre-trial status conference, the court heard oral argument on her potential dismissal (ECF No. 28). It concluded that res judicata precluded Plaintiff from suing her here. See, e.g. , Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir. 1993) ("California, as most states, recognizes that the doctrine of res judicata will bar not only those claims actually litigated in a prior proceeding, but also claims that could have been litigated."). Plaintiff agreed, without objection, to her dismissal (ECF No. 29).
The court then tried the matter. Plaintiff and Defendant were the only witnesses called.
D. Plaintiff's Post-Trial Application to Enter Documents into Evidence
After the trial, Plaintiff realized that three exhibits he had filed as attachments to his first amended complaint were not received in evidence (see ECF No. 12). They include: (1) a letter from Marissa Pyle; (2) a declaration from Marguerite Lehman; and (3) a declaration from Erica Birkholz (id. ). See also Plaintiff's Trial Ex. I, J, and K. So Plaintiff filed a post-trial application to enter these documents into evidence (ECF No. 37). All three describe Defendant's employing harassment methods similar to those in this case. Defendant did not respond to this application.
The court understands that Defendant is not an attorney. It thus recognizes that his failure to object to Plaintiff's application might stem from a lack of understanding.
*173 Nevertheless, "[i]t is a fundamental rule of evidence that an objection not timely made is waived." United States v. Jamerson , 549 F.2d 1263, 1266-67 (9th Cir. 1977). Indeed, "if no objection is made at the time the evidence is offered and received, its admissibility generally cannot be challenged on appeal." United States v. Wilson , 690 F.2d 1267, 1273-74 (9th Cir. 1982) (first citing Vitello v. United States , 425 F.2d 416, 423 (9th Cir. 1970) ; then citing FED. R. EVID. 103(a)(1) ).
An exception applies, however, when a "plain error" affects a substantial right. See FED. R. EVID. 103(d). But the court concludes that admitting the proposed exhibits into evidence would not constitute plain error. First, Defendant's constitutional rights will not be affected. The only conceivably relevant provision is the Sixth Amendment's Confrontation Clause. See U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"). That protection is not implicated here because it applies solely to criminal and quasi-criminal matters. In re Denh Nhiet Chu , BAP No. NV-07-1243-McMoPa, 2008 WL 8444805, at *10-11, 2008 Bankr. LEXIS 4736, at *28-29 (9th Cir. BAP Mar. 18, 2008) ; see also Hannah v. Larche , 363 U.S. 420, 440 n.16, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960) (the Sixth Amendment is "specifically limited" to criminal prosecutions). An adversary proceeding is not tantamount to a criminal proceeding, and a nondischargeability judgment is not a criminal penalty. In re Denh Nhiet Chu , 2008 WL 8444805, at *11, 2008 Bankr. LEXIS 4736, at *29.
Turning to the documents, they tend to prove two things: (1) Defendant's propensity to send harassing text messages; and (2) the texter's identity in this case. See Plaintiff's Trial Ex. I, J, and K. Although the former purpose is prohibited character evidence, the latter is admissible because Defendant disputes that he sent the subject text messages. See FED. R. EVID. 404(a)(1), (b) ; see also Hirst v. Gertzen , 676 F.2d 1252, 1262 (9th Cir. 1982) (evidence of prior acts is admissible to prove identity when that is disputed). Moreover, the court considers these documents to be cumulative evidence on the identity issue, which means their admission does not affect a substantial right. See United States v. Soulard , 730 F.2d 1292, 1303 (9th Cir. 1984) (when evidence is cumulative, the error in admitting it, if any, is not prejudicial); see also Fortier v. Dona Anna Plaza Partners , 747 F.2d 1324, 1332 (10th Cir. 1984) (admission of evidence that is cumulative of other admitted evidence does not affect a substantial right). Consequently, because no plain error will arise from doing so, the court admits Plaintiff's Trial Exhibits I, J, and K into evidence for the limited purpose of proving the texter's identity.
III. FACTUAL BACKGROUND AND FINDINGS
Having carefully considered the testimony and other evidence, the court makes the following factual findings.
A. The Text Messages and Underlying Judgment
The parties are swing dancers. Plaintiff has been an instructor since 1999. Defendant started dancing around the same time. And he eventually began hosting informal practices and planning dance events. Animosity arose between the parties because they considered one another competitors. Their relationship deteriorated as a result.
Defendant testified that Plaintiff sought to exclude him from local dance groups. He says Plaintiff gossiped about him and tried to persuade other dancers not to *174 associate with him. Defendant also accuses Plaintiff of attempting to extort money from him. And when that failed, Plaintiff allegedly organized a dance event that conflicted with one Defendant had been planning. It is clear that these incidents stirred up ill will in Defendant against Plaintiff.
The first text message was sent on March 20, 2015. Plaintiff's Trial Ex. A and B. It went to Whitney Shay from an unknown number. Plaintiff's Trial Ex. A and B. The text insinuated that Ms. Plys - who was about eight months along at the time - was made pregnant by Jeff Eldridge, not Plaintiff.[8] Plaintiff's Trial Ex. A and B. Shay immediately contacted Eldridge. Eldridge then sent reply texts to determine the texter's identity. He and Shay each received a handful of additional text messages from the mystery person, most of which were crude and explicit in their content. Plaintiff's Trial Ex. A and B. They chose not to tell the Plyses.
A month later - less than a week before the baby was born - Plaintiff received a text message from a different number accusing Ms. Plys of having an affair and carrying Eldridge's child. Plaintiff's Trial Ex. A and B. After speaking to Eldridge, Plaintiff learned about the March texts. Plaintiff's Trial Ex. A; Defendant's Trial Ex. 2. Within days of the newborn's birth, Plaintiff received a new message - from yet another phone number - that read: "Oh, that's sweet of you to hold Jeff's baby[.]" Plaintiff's Trial Ex. A and B. After calming their initial panic, the Plyses determined that the text referred to a photo they had posted on Facebook. Defendant's Trial Ex. 2. Over the next month, Plaintiff received nine more text messages from five new phone numbers. Plaintiff's Trial Ex. A and B. They continued the upsetting language, referred to the Plyses in derogatory terms, and insisted that Eldridge is the baby's biological father.[9] Plaintiff's Trial Ex. A and B.
Plaintiff testified that he posted a picture on Facebook of himself and the baby asleep, with the photo's privacy settings limited to "friends only." That means only users who were his Facebook friend could view the photo. He then received a text message saying, "Wow everyday [sic] that baby looks more like Jeff even though you're sleeping by it[.]" Plaintiff's Trial Ex. A and B. Plaintiff received another text responding to a picture displayed on Eldridge's Facebook page (also limited to "friends only"). Defendant's Trial Ex. 2. Plaintiff and Eldridge thus realized the texter was one of their mutual friends.
A private investigator advised Plaintiff to continue to manipulate his social media privacy settings to uncover the texter's identity. He did, and narrowed the search down to three individuals, including Defendant. Plaintiff's Trial Ex. A and B; Defendant's Trial Ex. 2. On June 29, Plaintiff posted the same photo three times with three different captions; each was distributed so that the only person who could see a particular caption was one of the suspects. Plaintiff's Trial Ex. B; Defendant's Trial Ex. 2. The caption that Defendant - and only Defendant - could see mentioned that the baby "has Daddy's eyes!" Plaintiff's Trial Ex. B. Within hours, Plaintiff received a message that read, "The baby does have Jeff's eyes[.]" Plaintiff's Trial Ex. A and B. Shay also received a text about a different staged picture that only Defendant could see. Plaintiff's Trial Ex. A and B.
*175 In late June 2015, Plaintiff turned this information over to the police detective. Plaintiff's Trial Ex. B. On July 8 - a day after the last text was sent - the detective interviewed Defendant at work (an insurance office). Plaintiff's Trial Ex. B. After first denying any involvement, Defendant admitted to sending and enlisting others to send the text messages. Id. He also allowed the detective to forensically download his cellphone. Id. According to his police report, it contained several references to the Plyses, including mention that the parties did not get along. Id.
After Defendant confessed, the Plyses obtained a civil harassment temporary restraining order against him under California Code of Civil Procedure ("CCP") § 527.6. Plaintiff's Trial Ex. B; see also Case No. 37-2015-00022550-CU-HR-CTL (the "Restraining Order Proceeding").[10] And in November 2015, the San Diego Superior Court entered a final restraining order against Defendant. Plaintiff's Trial Exhibit C; see also Case No. 37-2015-00022550-CU-HR-CTL. In addition, Defendant pleaded guilty to one count of disturbing the peace under California Penal Code § 415(2). Plaintiff's Trial Exhibit D.
Finally, the Plyses sued Defendant. See Case No. 37-2015-00326756-SC-SC-CTL. As noted above, the small claims court awarded them $10,150. The Superior Court affirmed and increased that judgment to $11,466.23. Plaintiff's Trial Ex. E.
B. The Texter's Identity
Defendant's case-in-chief was devoted largely to denying all involvement in the harassment. He testified that he does not know who is responsible for the text messages. But he believes Plaintiff used them to target and disgrace him. Defendant points to the Plyses' online blog, which accuses him of sending the messages. See Defendant's Trial Ex. 1, 2, and 3. It also broadcasts his personal affairs, including details of the various court proceedings. See Defendant's Trial Ex. 1, 2, and 3. The posts recount the case's facts in great detail, often in undesirable language.
Defendant further asserted that the police detective intimidated him and made him feel to be under duress. His confession was thus coerced and given out of desperation. In addition, he claimed that no one involved in the state court actions - including his criminal defense attorney - gave him a fair opportunity to defend himself. Rather, the small claims court judge was biased against him, and the Superior Court judge simply rubber-stamped the judgment on appeal. The court does not find Defendant credible or persuasive on any of these points.
The overwhelming weight of the evidence shows convincingly that Defendant sent at least some of the text messages.[11] To start, Plaintiff's manipulation of his Facebook settings, such that only Defendant could see certain pictures that directly correlate with the subject texts, strongly suggests that Defendant contributed to drafting the messages. Defendant attempts to discredit Plaintiff's testimony on this point by asserting that everyone can see his *176 Facebook page. The court is puzzled at this argument. To the extent he is saying Plaintiff could not alter a photo's privacy settings to limit access to only one person, he is wrong. See, e.g. , Ehling v. Monmouth-Ocean Hosp. Serv. Corp. , 961 F.Supp.2d 659, 668 (D.N.J. 2013) ("Facebook allows users to select privacy settings for their Facebook walls. Access can be limited to the user's Facebook friends, to particular groups or individuals, or to just the users."). The court is likewise unpersuaded by the suggestion that, on each occasion, a third party saw the picture on Defendant's Facebook page and then sent Plaintiff the corresponding message without Defendant's cooperation.
Moreover, the text messages stopped as soon as the police detective met with Defendant. Defendant provided no explanation for this timing. The court thus concludes that he was responsible for the texts and ended them once law enforcement intervened. Additionally, three of the phone numbers at issue match those Defendant used when he was sending inappropriate messages to Ms. Lehman. Plaintiff's Trial Ex. B and J.
The court also rejects the argument that Plaintiff would devote tremendous time and treasure to chasing Defendant throughout state and federal courts in a deliberate scheme to tarnish his reputation. Such actions would essentially require serial perjury in at least four separate judicial proceedings. That seems unlikely given the modest amount in controversy. Indeed, it is not well taken that the Plyses would seek psychological treatment and a paternity test just to further a scheme to shame Defendant. See Plaintiff Trial Ex. G; Defendant's Trial Ex. 2. The court recognizes that the Plyses' blog highlights intimate details of Defendant's life. That was certainly provocative and ill-advised on their part. But the court fails to see how announcing details of court proceedings and other public records necessarily indicates ill will.[12] Moreover, Defendant's testimony is inconsistent. On the one hand, he seems to suggest that Plaintiff was actually being harassed (i.e., he did not fabricate the text messages). On the other, his theory is that Plaintiff is targeting him. For both statements to be true, Plaintiff must have chosen not to pursue his actual harasser and instead to exploit the text messages as an opportunity to vilify Defendant. This is not a convincing suggestion.
Nor is the court persuaded that Defendant's police confession was false or otherwise invalid. There is no evidence of that. Defendant may well have been nervous and anxious. See Plaintiff's Trial Ex. B. But the court fails to see how a voluntary interview in an insurance company's office rises to the level of coercion. Likewise, the argument that the state court judges discriminated against Defendant is implausible on the current record. Defendant's conclusory, self-serving accusations - apparently made for the first time in this court - are insufficient to invalidate the State Court Judgment. His sentiment that the state court judges "listened to [him], but did not hear [him]" is perhaps not an uncommon one among unsuccessful litigants. But the court will not disregard the state court's final judgment based solely on Defendant's self-serving perception of bias or prejudice.
Lastly, and most significantly, the state courts have already found Defendant *177 liable for the text messages. See Plaintiff's Trial Ex. E. The collateral attack doctrine thus precludes Defendant from assailing the State Court Judgment here. Rein v. Providian Fin. Corp. , 270 F.3d 895, 902 (9th Cir. 2001) ; see also Celotex Corp. v. Edwards, 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.") (alteration in original) (internal quotation marks omitted). For the doctrine to apply, the relevant claim must have been adjudicated in the prior proceeding. See Skokomish Indian Tribe v. United States , 332 F.3d 551, 560 (9th Cir. 2003). The State Court Judgment is predicated on Defendant's being the texter. So, even if Defendant had persuaded this court of his innocence, he cannot now nullify the state court's conclusions. The court thus finds that Defendant was the source of the offending texts.
IV. LEGAL ANALYSIS AND CONCLUSIONS
A. Section 1328(a)(4) Nondischargeability
Generally, a Chapter 13 debtor receives a § 1328(a) discharge once plan payments are complete. In re Toste , BAP No. EC-13-1266-TaJuKu, 2014 WL 3908139, at *2, 2014 Bankr. LEXIS 3441, at *6 (9th Cir. BAP Aug. 12, 2014) ; see also In re Finney , 486 B.R. 177, 179 (9th Cir. BAP 2013). A Chapter 13 discharge is broader than one in other chapters, and it "discharges some claims that § 523(a) makes nondischargeable in other contexts." In re Toste , 2014 WL 3908139, at *2, 2014 Bankr. LEXIS 3441, at *6. Specifically, § 1328(a) only incorporates specific subsections of § 523(a).[13] See 11 U.S.C. 1328(a). Most notably, § 523(a)(6)'s willful and malicious injury claims are not included. See id. "Instead, § 1328(a)(4) makes only the sub-group of civil awards based on willful or malicious personal injury or wrongful death claims nondischargeable in a chapter 13 case." In re Toste , 2014 WL 3908139, at *2, 2014 Bankr. LEXIS 3441, at *6 (citing 11 U.S.C. 1328(a)(4) ).
"There is little case law construing § 1328(a)(4)." Id. at *3, 2014 Bankr. LEXIS 3441, at *8. It is clear, however, that the statute "makes some, but not all § 523(a)(6) type claims for relief nondischargeable in the typical chapter 13 case." Id. at *2, 2014 Bankr. LEXIS 3441, at *7 (citation omitted). Indeed, § 1328(a)(4) differs from § 523(a)(6) in three significant ways. In re Waag , 418 B.R. 373, 377 (9th Cir. BAP 2009). Specifically, the former:
(1) [ ] applies to "willful or malicious" injuries instead of to "willful and malicious" injuries; (2) [ ] applies to personal injuries or death and not to injuries to property; and (3) [ ] applies to restitution and damages "awarded in a civil action against the debtor" as a result of such injuries.
Id. (emphasis in original).
1. Willful or Malicious Injury
As explained, the " 'willful or malicious" injury component of § 1328(a)(4) differs from § 523(a)(6), which discharges debts that result from "willful and malicious' injury." Id. (emphasis in original); see also *178 In re Grossman , 538 B.R. 34, 39 (Bankr. E.D. Cal. 2015) ; In re Deluty , 540 B.R. 41, 48 (Bankr. E.D.N.Y. 2015) ("[P]laintiff must show only that the Debtor's actions were willful or malicious, not both."). That being said, the legal standards for willfulness and maliciousness under § 523(a)(6) apply in the § 1328(a)(4) context. See In re Grossman , 538 B.R. at 39 ("Nothing suggests that Congress intended the terms 'willful' and 'malicious' should have different meanings within the same statute.").
Under the controlling standard, an injury is willful if the debtor "acted with either the desire to injure or a belief that injury was substantially certain to occur." Ditto v. McCurdy , 510 F.3d 1070, 1078 (9th Cir. 2007) ; In re Hamilton , 584 B.R. 310, 319 (9th Cir. BAP 2018), appeal docketed , Nos. 18-60026, 18-60027. And, "[a] malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Ormsby v. First Am. Title Co. (In re Ormsby) , 591 F.3d 1199, 1207 (9th Cir. 2010) (quoting Petralia v. Jercich (In re Jercich ), 238 F.3d 1202, 1209 (9th Cir. 2001) ) ).
The word "willful" ... modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury , not merely a deliberate or intentional act that leads to injury.... [T]he [statutory] formulation triggers in the lawyer's mind the category intentional torts, as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself.
Kawaauhau v. Geiger , 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).
a. Willfulness
A plaintiff can satisfy the "willful" injury requirement by proving either of its two modes, namely that the debtor: (1) had a subjective motive to inflict injury; or (2) believed that injury was substantially certain to result from his conduct. See Carrillo v. Su (In re Su) , 290 F.3d 1140, 1142 (9th Cir. 2002) ; In re Jercich , 238 F.3d at 1208. The debtor "must have intended the consequences of the action, not just the action itself." In re Thiara , 285 B.R. 420, 427 (9th Cir. BAP 2002). The willfulness standard "focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain." Id. at 432 (citing In re Su , 290 F.3d at 1146 ).
Further, "the debtor's actual knowledge can be found through circumstantial evidence." Id. (citing In re Su, 290 F.3d at 1146 n.6 ("[W]e are not suggesting that a court must simply take the debtor's word for his state of mind. In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.") ); see also In re Jacks , 266 B.R. 728, 741 (9th Cir. BAP 2001) ("[S]ubjective intent may be gleaned from objective factors."); In re Galan , 455 B.R. 214, 222 (Bankr. D. Idaho 2011) ("In proving a debtor's actual knowledge, the Court may consider circumstantial evidence, including an aggregation of pre-injury acts, tending to establish what the debtor must have actually known at the time he committed the conduct producing the injury."). And, "[w]hen determining the debtor's intent under § 523(a)(6), there is a presumption that the debtor knows the natural consequences of his actions." In re Le Hawk Le , BAP No. AZ-15-1364-JuFL, 2016 WL 5956652, at *5 (9th Cir. BAP Oct. 13, 2016) (citing In re Ormsby , 591 F.3d at 1206 ).
*179 b. Maliciousness
"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.' " In re Jercich , 238 F.3d at 1209. This is an objective standard. In re Chin-Liang Chan , 325 B.R. 432, 436 (Bankr. N.D. Cal. 2005). "Malice may be inferred based on the nature of the wrongful act." In re Ormsby , 591 F.3d at 1207 ; see also Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton) , 942 F.2d 551, 554 (9th Cir. 1991) ; In re Russell , 203 B.R. 303, 318 (Bankr. S.D. Cal. 1996) ("A plaintiff must show a defendant committed a 'wrongful act ... done intentionally, [which] necessarily produces harm and is without just cause or excuse ... even absent proof of a specific intent to injure .' ") (emphasis in original) (citing In re Gee , 173 B.R. 189, 191-92 (9th Cir. BAP 1994) ). Before malice may be inferred, however, the willful injury must be established. In re Ormsby , 591 F.3d at 1207 (citing In re Thiara , 285 B.R. at 434 ); In re Tolotti , BAP No. CC-14-1019-TaPaK, 2014 WL 4197847, at *6 (9th Cir. BAP Aug. 25, 2014) ).
Additionally, "post- Geiger , the 'done intentionally' element of a 'malicious' injury brings into play the same subjective standard of intent which focuses on the converter's knowledge of harm to the creditor." In re Thiara , 285 B.R. 420 at 434 ; see also In re Jercich , 238 F.3d at 1209. Malice "does not require a showing of biblical malice, i.e., personal hatred, spite or ill-will." Murray v. Bammer (In re Bammer) , 131 F.3d 788, 791 (9th Cir. 1997) (emphasis in original) (citing Impulsora Del Territorio Sur, S.A. dba Hotel Solmar v. Robustelli (In re Cecchini) , 780 F.2d 1440, 1442-43 (9th Cir. 1986) ). "Nor does it require a showing of an intent to injure, but rather it requires only an intentional act which causes injury." Id.
As to the fourth element, the Ninth Circuit has defined "just" as " 'honorable and fair in dealings and actions,' 'consistent with moral right,' and 'valid within the law.' " In re Bammer , 131 F.3d at 792. Further, "[a]lthough in general a plaintiff has the burden to prove by a preponderance of the evidence that the debt arose from willful and malicious conduct ... just cause or excuse is in the nature of an affirmative defense." In re Hagele , BAP No. EC-15-1033-JuDTa, 2016 WL 3965899, at *6 (9th Cir. BAP July 18, 2016) (citing In re Jercich , 238 F.3d at 1208 ). " Jercich by implication supports the position that a debtor must first put forth the just cause or excuse." Id. And "[e]vidence of specific intent to injure can negate just cause or excuse." In re Armstrong , No. 04-04320-TLM, 2006 WL 2850527, at *11 (Bankr. D. Idaho Oct. 3, 2006) (citing In re Khaligh , 338 B.R. 817, 831 (9th Cir. BAP 2006) ).
2. Personal Injury to an Individual
Section § 1328(a)(4) does not apply to debts arising from injury to property. See, e.g. , In re Waag , 418 B.R. at 377. "By omitting § 523(a)(6)'s language, 'to the property of another entity,' § 1328(a)(4) excepts only a limited range of debts from discharge." In re Adams, 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012) (quoting 11 U.S.C. § 523(a)(6) ). Since it is presumed that "Congress acts intentionally and purposefully" when it "includes particular language in one section of a statute but omits it in another section of the same Act," an injury under § 1328(a)(4) should only include personal injury, not property damage. See id. ; see also Russello v. United States , 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Indeed, the court is unaware of any case where a property *180 injury was a sufficient basis for recovery under § 1328(a)(4).[14]
It is remains unclear, however, "whether 'personal injury' for § 1328(a)(4) purposes: (1) refers solely to personal bodily injury; (2) includes nonphysical injury but not business or financial injuries; or (3) includes all injuries insofar as the injury is treated as a personal injury under non-bankruptcy law." In re Toste , 2014 WL 3908139, at *3, 2014 Bankr. LEXIS 3441, at *8-9. The vast majority of courts define 'personal injury' as harm both physical and nonphysical (such as defamation and intentional infliction of emotional distress). See, e.g. , In re Szewc , 568 B.R. 348, 358 (Bankr. D. Or. 2017) (" '[P]ersonal injury' depends on whether the claim ... primarily protects a 'personal' as opposed to 'property, financial, or business' right."); In re Grossman , 538 B.R. at 41 ; In re Adams, 478 B.R. at 486. They have reached this conclusion by comparing § 1328(a)(4)'s language with other statues.
For example, the statute's text differs from § 522(d)(11)(D)'s, which employs the phrase "personal bodily injury." 11 U.S.C. § 522(d)(11)(D) (property may not be exempt if it is traceable to a payment "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss."). "On a plain language basis, it is significant that Congress used the term 'personal bodily injury' in § 522(d)(11) to exclude personal injury that is not bodily injury." In re Grossman , 538 B.R. at 41-42 ; see also In re Adams , 478 B.R. at 486 ("Congress knew how to say 'personal bodily injury' when it wanted to.") (emphasis in original) (quotation omitted) ). Thus, "when Congress used the term 'personal injury' in § 1328(a)(4) without the qualifier 'bodily,' it must have meant a class of 'personal injury' not limited to 'bodily.' " In re Grossman , 538 B.R. at 41-42.
Likewise, "courts have been guided by judicial interpretations of similar language in 28 U.S.C. §§ 157(b)(2)(O) and (5)." In re Szewc , 568 B.R. at 358 (first citing In re Adams , 478 B.R. at 486 ; then citing In re Bailey , 555 B.R. 557, 561-64 (Bankr. N.D. Miss. 2016) ; and then citing In re Grossman , 538 B.R. at 42 ). "Those subsections limit a bankruptcy court's authority to adjudicate 'personal injury tort' claims. Courts interpreting that term have likewise focused on the type of legal interest primarily infringed." Id. Indeed, they have held that "personal injury tort" includes "common law torts," including "traditional nonphysical torts, such as defamation and libel." In re Smith , 389 B.R. 902, 908 (Bankr. D. Nev. 2008) ; see also In re Ice Cream Liquidation, Inc. , 281 B.R. 154, 161 (Bankr. D. Conn. 2002) (suggesting financial, business, and property tort claims are not a personal injury tort). Lastly,
The Supreme Court construed the phrase "damages received on account of *181 personal injury" in a former version of the Internal Revenue Code to include nonphysical injuries. United States v. Burke , 504 U.S. 229, 234-37, 112 S.Ct. 1867, 119 L.Ed. 2d 34 (1992) (former 26 U.S.C. § 104(a)(2) ). Congress responded to Burke by restricting that statute to damages "on account of personal physical injury or physical sickness." Small Business Job Protection Act of 1996, § 1605, Pub. L. 104-188, 110 Stat. 1838.
In re Grossman , 538 B.R. at 42. Because Congress is presumed to be mindful of settled judicial interpretations of terms when it uses them, it knew what it was doing when it adopted the words "personal injury" in § 1328(a)(4). Id. The court finds the analysis in these cases persuasive. It therefore considers both physical and non-physical harms to be personal injuries under the statute.
3. Restitution or Damages Awarded in a Civil Action
The final requirement is that the debt sought to be declared nondischargeable must be for restitution or damages "awarded in a civil action" against the debtor. 11 U.S.C. § 1328(a)(4). Courts earlier interpreted the word "awarded" to be in the past tense. See In re Byrd , 388 B.R. 875, 877 (Bankr. C.D. Ill. 2007) ; In re Nuttall , No. 06-14233 (GMB), 2007 WL 128896, at *8-10 (Bankr. D.N.J. Jan. 11, 2007). But In re Taylor determined that the statute's overall grammatical structure shows no intended differentiation between a judgment entered before and one entered after a bankruptcy petition is filed. 388 B.R. 115, 120 (Bankr. M.D. Penn. 2008). Since In re Taylor , every court to address the issue - including the 9th Circuit Bankruptcy Appellate Panel - has agreed that a post-petition award of restitution or damages satisfies § 1328(a)(4)'s requirements. See In re Waag , 418 B.R. at 381 ; see also, e.g. , In re Szewc , 568 B.R. at 357 n.11 ; In re Abbott , No. 15-06822-5-SWH, 2016 WL 6892456 at *2, 2016 Bankr. LEXIS 4047 at *5 (Bankr. E.D.N.C. Nov. 22, 2016) ; In re Grosso , 512 B.R. 768, 772 n.3 (Bankr. D. Del. 2014) (collecting cases). Section 1328(a)(4) therefore "does not require, explicitly or implicitly, a prepetition judgment." In re Waag , 418 B.R. at 381.
The State Court Judgment plainly fulfills the damages element. Indeed, it would be sufficient even under the In re Byrd standard. See , 388 B.R. at 877. So § 1328(a)(4)'s third element is not in dispute. The remaining issues, then, are whether: (1) Defendant acted willfully or maliciously; and (2) the State Court Judgment compensated Plaintiff for a personal injury. For the following reasons, the court concludes that Defendant's conduct was both willful and malicious. And his actions inflicted personal injury on Plaintiff. It consequently finds that the State Court Judgment is nondischargeable under § 1328(a)(4).
B. Defendant's Conduct Was Willful
The facts show that Defendant had a subjective motive to injure the Plyses. The text messages contained derogatory language and inflammatory accusations plainly designed to harass and cause emotional distress. And Defendant - at least initially - sought to engender paranoia and marital strife between the Plyses. Moreover, several of the texts were timed to aggravate these reactions, being sent for example within days of: (1) the newborn's birth; (2) Ms. Plys's first Mother's Day; and (3) Plaintiff's first Father's Day. Plaintiff's Trial Ex. A and B. These circumstances point clearly to Defendant's intent to harm Plaintiff.
Yet even if Defendant did not intend to injure Plaintiff, he must surely have understood *182 that the text messages were substantially likely to harass, annoy, and cause distress. Indeed, Defendant is presumed to know the natural consequences of his actions. See In re Le Hawk Le , 2016 WL 5956652, at *5. Anger, frustration, and mental anguish were the predictable result of hearing repeated allegations of his wife's committing adultery and carrying his friend's child. There is no reasonable argument that Plaintiff's injuries were not the ordinary response to the text messages he received.
Accordingly, the court finds that Plaintiff's injury resulted from Defendant's willful conduct.
C. Defendant Acted with Malice
As explained, § 1328(a)(4) does not require both willful and malicious conduct. See In re Waag , 418 B.R. at 377. So the court could find liability based on willfulness alone. See id. Nevertheless, for the sake of analytical completeness, it will address whether Defendant acted maliciously. The court infers malice through the nature of Defendant's willful actions. See In re Ormsby , 591 F.3d at 1207. Even so, the totality of the circumstances leaves no doubt that Defendant acted maliciously in sending the text messages.
First, Defendant acted intentionally. The texts were no accident. And their content was neither subtle nor humorous. Indeed, he sent particularly outrageous text messages at times calculated to do the most damage. They were also designed to inflict emotional harm. Additionally, these actions were wrongful. The state court found Defendant liable for vexing and harassing the Plyses. And this court cannot reasonably conclude otherwise. Moreover, Defendant's wrongful intentional conduct caused Plaintiff's injury.
The final element of malicious injury is lack of a just cause or excuse, which Defendant has the burden to prove. See In re Hagele , 2016 WL 3965899, at *6. He has not done so. Moreover, even if a justification existed, Defendant's specific intent to injure Plaintiff would likely have negated it. See In re Armstrong , 2006 WL 2850527, at *11. The court concludes that Defendant acted with malice when he sent the text messages to Plaintiff. Plaintiff has thus also satisfied the malicious prong of § 1328(a)(4). The court consequently finds that Defendant acted both willfully and maliciously.
D. Plaintiff Suffered a Personal Injury
As explained above, under § 1328(a)(4), Plaintiff's injury cannot be to property. But it does not necessarily have to be a bodily harm or even a traditional tort. See, e.g. , In re Grossman , 538 B.R. at 42. To determine whether Plaintiff's injury meets this standard, the court looks to state law. See In re Toste , 2014 WL 3908139, at *3, 2014 Bankr. LEXIS 3441, at *9 ("[G]iven that here the damages awarded in the Judgment were based on a state law tort of nuisance, we initially look to California law to determine whether a private nuisance cause of action involves personal injury."). Plaintiff's harm amounts primarily to harassment, which the court holds to be a personal injury.
California law defines harassment as "knowing and willful conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." CAL. CODE CIV. P. § 527.6(b)(4).[15] Such a tort is no *183 doubt personal (i.e., not merely affecting property). See, e.g. , Huntingdon Life Sci., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc. , 129 Cal. App. 4th 1228, 1258, 29 Cal.Rptr.3d 521 (2005) (a cause of action under CCP § 527.6 only applies to natural persons). And the State Court Judgment was awarded to compensate the Plyses for their annoyance and emotional distress, not for any property or financial loss. The court therefore concludes that Plaintiff's injury was a personal one.
The court notes that the In re Smith court stated, in § 157(b)(5) context, that sexual harassment claims are not personal injury torts. 389 B.R. at 908. It reasoned that excluding those claims and civil rights suits, but including defamation claims, "does not go so far as to allow nonbankruptcy law to define certain torts as personal injury torts." Id. It makes this distinction so that "personal injury torts by statutory designation only" are not covered. See id. Even assuming that reasoning is correct and applies in the § 1328(a)(4) context, the court's analysis is unmoved. Although civil harassment is modernly a statutory tort, it is rooted in California common law. To be sure, CCP § 527.6"was passed to supplement the existing common law torts of invasion of privacy and intentional infliction of emotional distress." Nebel v. Sulak , 73 Cal. App. 4th 1363, 1369, 87 Cal.Rptr.2d 385 (1999). Consequently, civil harassment is not a tort solely because of its statutory designation.
Furthermore, California small claims courts do not hold litigants to the same legal formalities as do courts of record. See CAL. CODE CIV. P. § 116.310(a) (no formal pleading is necessary to initiate a small claims action). The Plyses did not even have to plead a cause of action. In fact, the record does not expressly identify one. So the underlying claims may conceivably have been for the common law wrongs of invasion of privacy or intentional infliction of emotional distress. And those causes are unquestionably common law torts. Nebel , 73 Cal. App. 4th at 1369, 87 Cal.Rptr.2d 385 ; see also Fletcher v. W. Nat'l Life Ins. Co. , 10 Cal. App. 3d 376, 394, 89 Cal.Rptr. 78 (1970) (providing the common law elements for intentional infliction of emotional distress); Hill v. Nat'l Collegiate Athletic Ass'n , 7 Cal. 4th 1, 23-27, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994) (discussing the common right of privacy). For these reasons, the court concludes that Plaintiff suffered a personal injury at Defendant's hand. And because all of § 1328(a)(4)'s elements have been met, it finds that the State Court Judgment should not be discharged.
V. DAMAGES AND EXTENT OF NONDISCHARGEABILITY
A. The Entire State Court Judgment Is Nondischargeable
The State Court Judgment awards the Plyses $11,466.23. Plaintiff's Trial Ex. E. The damages portion of it totals $10,000 - $5,000 to Plaintiff and $5,000 to Ms. Plys. Id. And Plaintiff seeks to have the both his and his wife's recovery declared nondischargeable. At trial, Defendant correctly noted that Plaintiff is the only party in this case. Plaintiff responded that he believes he and his wife are the same legal person for these purposes. The court understands that neither party is a lawyer. Accordingly, it deems Defendant's argument to be challenging Plaintiff's standing to assert his wife's legal claims. And Plaintiff is credited as asserting that his marital relationship accords him authority to manage Ms. Plys's interests in the State Court Judgment.
*184 The court addresses each point in turn.
B. Plaintiff Lacks Standing to Assert Ms. Plys's Claims
Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." In re Edwards , 454 B.R. 100, 104 (9th Cir. BAP 2011) (quoting Warth v. Seldin , 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ). It has both constitutional and prudential dimensions. The plaintiff bears the burden of establishing standing - as to both types - for each claim for relief asserted. In re Baroni , BAP No. CC-14-1578-KuDTa, 2015 WL 6956664, at *6-7, 2015 Bankr. LEXIS 3859, at *20-21 (9th Cir. BAP Nov. 10, 2015) (citing In re Veal , 450 B.R. 897, 907 n.11 (9th Cir. BAP 2011) ). "Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." In re Veal , 450 B.R. at 906 ; see also In re Tarantola , 491 B.R. 111, 118 (Bankr. D. Ariz. 2013) ("To establish constitutional standing, a creditor must clear the relatively low hurdle of demonstrating injury in fact, causation, and redressability."). "Prudential standing imposes limitations on the exercise of federal jurisdiction." In re Edwards , 454 B.R. at 104 (citing Elk Grove Unified Sch. Dist. v. Newdow , 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) ). In essence, it "requires the plaintiff to assert its own claims rather than the claims of another." In re Griffin , BAP No. WW-11-1362-HKiJu, 2012 WL 1191894, at *3 (9th Cir. BAP Apr. 6, 2012) (citing Dunmore v. United States , 358 F.3d 1107, 1112 (9th Cir. 2004) ).
A litigant may, however, assert the legal rights of third parties under limited circumstances. Powers v. Ohio , 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) ; see also Kowalski v. Tesmer , 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) ("We have ... [recognized] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another."). To meet this exception, the litigant must prove three elements. First, he "must have suffered an 'injury in fact,' thus giving him a 'sufficiently concrete interest' in the outcome of the dispute[.]" Powers , 499 U.S. at 411, 111 S.Ct. 1364 (quoting Singleton v. Wulff , 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ). Second, "the litigant must have a close relation to the third party[.]" Id. (citing Singleton , 428 U.S. at 113-14, 96 S.Ct. 2868 ). Lastly, "there must be some hinderance to the third party's ability to protect his or her own interests." Id. (first citing Singleton , 428 U.S. at 115-16, 96 S.Ct. 2868 ; then citing Craig v. Boren , 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) ).
There is no doubt that Plaintiff has constitutional and prudential standing to seek redress of his own rights under the State Court Judgment. Rather, the issue is whether he has standing to assert his wife's interests. It is apparent that Plaintiff suffered an injury in fact and as a legal matter has a sufficiently close relation to his wife. But there is no evidence that Ms. Plys was hindered from joining this case. Indeed, she was able to assert her rights in the state court. Why then can she not do so here? Because this question remains unanswered, the court must conclude Ms. Plys faced no impediment to joining the adversary proceeding. See In re Baroni , 2015 WL 6956664, at *, 2015 Bankr. LEXIS 3859, at *20-21 (the plaintiff bears the burden of proving standing); see also *185 In re Singh , BAP No. EC-11-1700-DJuMk, 2013 WL 1615849, at *7-8, 2013 Bankr. LEXIS 4600, at *20-21 (9th Cir. BAP Apr. 15, 2013) (husband failed to satisfy the third-party standing exception when attempting to vacate a default judgment entered against his wife). The third-party standing exception thus does not apply. See Powers , 499 U.S. at 411, 111 S.Ct. 1364. Consequently, Plaintiff lacks prudential standing to assert Ms. Plys's legal claims.
C. Plaintiff's Has Authority to Manage the State Court Judgment
Just the same, under California community property law Plaintiff's standing alone is sufficient for the court to declare the entire State Court Judgment nondischargeable. The judgment was awarded during Plaintiff's and Ms. Plys's marriage. So it is community property by statutory presumption. CAL. FAM. CODE § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."); id. § 780 ("[M]oney and other property received or to be received by a married person in satisfaction of a judgment for damages for personal injury ... is community property if the cause of action for the damages arose during the marriage.").
California law likewise imposes a general presumption that all property acquired during marriage - other than by gift or inheritance - is community property, unless it is traceable to a separate property source. Hanf v. Summers (In re Summers) , 332 F.3d 1240, 1242-43 (9th Cir. 2003) ; see also In re Brace , 566 B.R. 13, 18-19 (9th Cir. BAP 2017) ; Haines v. Haines (In re Marriage of Haines) , 33 Cal. App. 4th 277, 289-90, 39 Cal.Rptr.2d 673 (1995). Once it has been shown that certain property was acquired during marriage, the burden shifts to the opposing party to prove it is separate property. Lincoln Nat'l Life Ins. Co. v. Graham , No. 2:12-cv-2177-SVW-RZ, 2013 WL 12132047 at *5, 2013 U.S. Dist. LEXIS 198366 at *18 (C.D. Cal. Jan. 3, 2013) (citing Estate of Murphy , 15 Cal. 3d 907, 917, 126 Cal.Rptr. 820, 544 P.2d 956 (1976) ); see also In re Marriage of Valli , 58 Cal. 4th 1396, 1400, 171 Cal.Rptr.3d 454, 324 P.3d 274 (2014).
It is undisputed that the Plyses were married when the State Court Judgment was entered. So it is the Defendant's burden to prove it is separate property. He has made no such showing. The court is unaware of any statute impugning the presumption that the judgment here is community property. See CAL. FAM. CODE § 760 ("Except as otherwise provided by statute..."). And Defendant offers no evidence or argument for why it should be considered separate property. See, e.g. , Estate of Murphy , 15 Cal. 3d at 917, 126 Cal.Rptr. 820, 544 P.2d 956. He did little more than bring the bare issue to the court's attention. That is insufficient to rebut the presumption. The State Court Judgment is therefore deemed to be the Plyses' community property.
As such, Plaintiff and Ms. Plys each own a "present, existing, and equal interest[ ] in the entire judgment." CAL. FAM. CODE § 751. And they each have authority to manage and control the totality of it. See id. § 1100(a) (except as otherwise provided, "either spouse has the management and control of the community personal property ... with the absolute power of disposition, other than testamentary, as the spouse has of the separate estate of the spouse."). Importantly, Plaintiff's management over the couple's community property includes the right to take legal action necessary to preserve and protect it. See id ; see also Lennar Homes of Cal., Inc. v. Stephens , 232 Cal. App. 4th 673, 681, 181 Cal.Rptr.3d 638 (2014) (explaining *186 that a married litigant "effectively brought suit on behalf of both himself and his wife" when he asserted "rights belonging jointly to both", even though his wife was not a named plaintiff).[16]
Thus while Plaintiff does not have standing to assert his wife's legal rights, he has the legal authority to manage and control their community property. And under California law, his management power accords him the authority to seek a nondischargeability judgment for Ms. Plys's portion of the State Court Judgment. See, e.g. , Lennar Homes of Cal. , 232 Cal. App. 4th at 681, 181 Cal.Rptr.3d 638. The court therefore finds it nondischargeable in its entirety.
VI. CONCLUSION
Plaintiff has proven all of § 1328(a)(4)'s elements. Consequently, his and his wife's $11,466.23 small claims judgment against Defendant is nondischargeable in its entirety, including postjudgment interest at the state rate of 10% from December 20, 2016.
A separate judgment will issue.
IT IS SO ORDERED.

To protect the minor's privacy, the court will refer to her as either "Plaintiff's daughter," "the baby," or "the newborn."

Unless otherwise noted, all statutory citations are to the Bankruptcy Code, Title 11 of the United States Code. And all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

The court takes judicial notice of the state court's docket. Fed. R. Evid. 201(b) ; see also Porter v. Ollison , 620 F.3d 952, 955 n.1 (9th Cir. 2010) (citing Dawson v. Mahoney , 451 F.3d 550, 551 (9th Cir. 2006) ).

The notice did not include § 523(a)(6) debts because such claims are not excepted from discharge in Chapter 13 cases unless the debtor receives a hardship discharge. See 11 U.S.C. §§ 523(a), 1328(a)(2) and (b).

The court also dismissed Plaintiff's § 727 claim because it is inapplicable in a Chapter 13 case (ECF No. 8).

Even if the original complaint had been timely filed, the court would have been obliged to dismiss Plaintiff's § 523(a)(6) claim because it lacked (and still lacks) jurisdiction to consider such a claim. See, supra note 4; see also In re Toste , BAP No. EC-13-1266-TaJuKu, 2014 WL 3908139, at *3, 2014 Bankr. LEXIS 3441, at *8 (9th Cir. BAP Aug. 12, 2014) (explaining that the creditor's § 523(a)(6) claim was "not ripe for adjudication" and "the bankruptcy court lack jurisdiction to adjudicate the claim" because the debtors did not request a hardship discharge); In re Montgomery , No. 12-70879-BHL-13, 2015 WL 1942972 at *2, 2015 Bankr. LEXIS 1470 at *4 (Bankr. S.D. Ind. Apr. 28, 2015) ("Unless and until [the debtor] does request a hardship discharge, [the creditor's] claim under § 523(a)(6) is not ripe for review in federal court.").

Around this time, Defendant's counsel was substituted out of the case (ECF Nos. 18 and 19). Debtors decided to continue pro se.

The police report - admitted without objection - identifies Shay as Plaintiff's ex-wife and Eldridge as Ms. Plys's ex-husband. Plaintiff's Trial Ex. B. Both are also swing dancers.

A paternity test confirmed that Plaintiff is the newborn's father. Defendant's Trial Ex. 2.

See Fed. R. Evid. 201(b) ; see also , supra note 2.

There is some question about whether Defendant worked alone, with relatives, or with some other group of individuals. The police detective reported that Defendant admitted to actually sending two text messages. Plaintiff's Trial Ex. B. Even if others were involved, the court finds that Defendant was the primary malefactor based on his relationship with Plaintiff and access to pictures and other online material. And it was his involvement that gave rise to the State Court Judgment. The court therefore need not decide the precise number of texts that Defendant sent.

Defendant also testified that the blog was defamatory. Not so. Defendant has not shown any untrue statement. See Cal. Civ. Code §§ 44, 46 (libel and slander both require the publication to be false). Again, the court does not condone the Plyses' blog posts. But they are neither unlawful nor material to this case.

The incorporated subsections are §§ 523(a)(1)(B), (a)(1)(C), and (a)(2) - (5) and (8) - (9).

See In re Waag , 418 B.R. at 377 ; In re Szewc , 568 B.R. 348, 358 (Bankr. D. Or. 2017) ; In re Cooney , No. 17-20071, 2017 WL 4158705, at *3, 2017 Bankr. LEXIS 3135, at *6 (Bankr. D. Kan. Sept. 14, 2017) ; In re Bailey , 555 B.R. 557, 561 (Bankr. N.D. Miss. 2016) ; In re Deluty , 540 B.R. at 47 ; In re Grossman , 538 B.R. at 41 ; In re Hartung , No. 12-21920, 2014 WL 201100 at *7-8, 2014 Bankr. LEXIS 231 at *20-21 (Bankr. E.D. Wis. Jan. 17, 2014) ; In re Woody , No. BK 11-71644-CMS, 2013 WL 5946127, at *6-7, 2013 Bankr. LEXIS 4725, at *22-23 (Bankr. N.D. Ala. Nov. 6, 2013) ; In re Adams, 478 B.R. at 486 ; In re Hadley , No. 09-73717-FJS, 2011 WL 3664609, at *15-16, 2011 Bankr. LEXIS 3193, at *37 (Bankr. E.D. Va. Aug. 19, 2011) ; In re Salvatore , No. 10-16449/JHW, 2011 WL 2115816 at *15, 2011 Bankr. LEXIS 2091 at *42 (Bankr. D.N.J. May 26, 2011) ; In re Harrsch , 432 B.R. 169, 174 n.9 (Bankr. E.D. Pa. 2010) ; In re Brown , No. A08-00235-DMD, 2008 WL 8652592 at *2-3, 2008 Bankr. LEXIS 5141 at *6-7 (Bankr. D. Alaska Nov. 17, 2008).

The statute also provides: "[T]he course of conduct must be such a would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress." Cal. Code Civ. P. § 527.6(b)(3). Because the state court awarded judgment to the Plyses, the court need not scrutinize whether this standard was satisfied.

This principle applies with equal vigor where one spouse's unilateral action affects all of the couple's community property. See, e.g. , Vick v DaCorsi , 110 Cal. App. 4th 206, 212-13, 1 Cal.Rptr.3d 626 (2003) (one spouse could accept a Code of Civil Procedure § 998 settlement on behalf of both spouses); Farag v. ArvinMeritor, Inc. , 205 Cal. App. 4th 372, 380-82, 140 Cal.Rptr.3d 320 (2012) (similar); In re Zavala , 505 B.R. 268, 275-76 (C.D. Cal. 2014) (a husband's unilateral assignment of a judgment entered for him and his wife was valid because he had the absolute power to manage the judgment); In re Bartlett , 24 B.R. 605, 608 (9th Cir. BAP 1982) ("[A]ll of a couple's California community property becomes part of the estate of the first spouse to file a petition."); Griffin v. Allstate Ins. Co. , 920 F.Supp. 127, 130 (C.D. Cal. 1996) (same).